THE PEOPLE, *ex rel.* Ward and others, *vs.* KELSEY.

A pier erected in a navigable river, is within the meaning of the statute concerning summary proceedings to recover the possession of lands, which relates to the tenants of any houses, lands or tenements.

The word "tenement" signifies every thing which may be holden, if it be of a permanent nature; and a wharf or pier is so permanent that it becomes a part of the soil and freehold itself.

What amounts to a *lease*, which will create the relation of landlord and tenant, between the parties.

When the state makes a grant of land covered with the waters of a bay or navigable river, and the grantee reclaims and raises it above the surface of the water, in the form of a wharf, it is not a mere *franchise* to collect wharfage, and belonging to the public at large for commercial purposes, but the grantee is invested with all the rights that pertain to the ownership of lands.

Whenever the relation of landlord and tenant is made out, in summary proceedings to recover the possession of the demised premises, the tenant is estopped from disputing the title of his landlord.

The failure of the lessor to construct a pier in conformity with the stipulations of the agreement, though it may constitute a good defense to an action upon the lease, to recover the rent, is no defense or answer to the claim of the landlord to have the possession restored to him.

Where tenants have taken possession of the demised premises, under the lease, and have thus become vested with the term, they cannot refuse to pay the rent, and at the same time retain the possession and enjoyment of the premises, against the claim of the landlord.

They have their election to pay the rent, or restore the possession when demanded. They cannot withhold both the rent and the possession.

In summary proceedings to recover the possession of lands, it is right and proper for the judge to charge the jury, upon the law of the case.

CERTIORARI to review proceedings had before the city judge of Brooklyn, under the statute relative to summary proceedings to recover the possession of lands.

Charles Kelsey, by lease bearing date September 27, 1858, let and rented to Robert M. Ward and Walter S. Gove certain storehouses and a pier at the foot of Sedgwick street in the city of Brooklyn, together with all his right, title and interest to the water in front thereof. On the 9th day of June, 1859, he by an agreement in writing agreed to build in a certain manner and let to the said Robert M. Ward and Walter S. Gove and one Edward P. Morris a structure to be built alongside the pier aforesaid, called an "addition to the pier," and they agreed to and did hire the same from him, at the rent of $1700 per annum. Ward, Gove and Morris entered into possession of the same on the 1st day of January, 1860, it being then finished, and they continued to occupy it until January, 1862, when, no rent having been paid, summary proceedings were instituted because of non-payment of rent for the year 1861, before Hon. George G. Reynolds, city judge of Brooklyn, and a jury, which resulted in a warrant, under which the tenants were dispossessed.

*S. Sanxay*, for the relators.

*Britton & Ely*, for the defendant.

*By the Court*, BROWN, J. On the 27th of September, 1858, Robert M. Ward and Walter S. Gove, two of the relators, by a lease of that date, became the tenants of the defendant, Charles Kelsey, of certain storehouses and a pier at the foot of Sedgwick street in the city of Brooklyn, together with all Kelsey's right and title to the water in front thereof. The term was for ten years from the 1st of February, 1859, at an annual rent of $10,000. They entered into possession of the demised premises, and have so remained in possession since the commencement of the term. On the 9th day of June, 1859, Kelsey, by another

The People *v.* Kelsey.

agreement in writing made with Robert M. Ward, Walter S. Gove and Edward P. Morris, the relators in the proceeding, bearing date on that day, agreed to build an addition of 30 feet in width to the pier, beginning with said addition, 40 feet out from the bulkhead and extending out to the outer end of the pier. He was to complete the same before the 1st of January thereafter. Ward, Gove and Morris agreed to pay to Kelsey the sum of $1700 per annum as rental for such addition, from the time of the completion of such addition to the end and termination of the lease before mentioned to Robert M. Ward and Walter S. Gove. The agreement then proceeded in the following words: "Said Kelsey agrees to let, and by these presents does let, unto said Ward, Gove and Morris, the said addition to the pier (in consideration of the rental above stipulated) from the time of its completion to the end and termination of the lease of the present pier. And said Kelsey agrees to build a good and substantial addition to the pier as regards strength and good material."

The construction of the pier, the entry of Ward, Gove and Morris upon the demised premises, and their occupation by them, the rent in arrear, and the holding over without the permission of Charles Kelsey after demand and default in the payment of the rent, are facts found affirmatively by the jury, as appears by the return of the city judge of Brooklyn to the writ of certiorari, and are to be taken as true, for all the purposes of this examination and decision.

The first objection taken to the regularity of the proceedings before the city judge of Brooklyn is, that he acquired no jurisdiction to act in the matter, because the statute in respect to summary proceedings to recover the possession of lands relates to the tenants of any houses, lands or tenements, and that a pier erected in a navigable river is not within the meaning of either of these terms. Hereditament would have been a more comprehensive term. But few persons, I think, would entertain any doubt that a pier of ground

reclaimed from tide water by embankment, or by raising the bottom by filling with stone, earth or other material, in the manner in which piers and wharves are constructed above the surface of the water, would be regarded as land. Where the reclamation is permanent and durable, what is it if it is not land? Be that as it may, the word tenement signifies every thing which may be holden, if it be of a permanent nature; and a wharf or pier is so permanent that it becomes a part of the soil and freehold itself.

It is also objected that the written instrument of the 9th June, 1859, is not a lease, and did not create between Kelsey, and Ward, Gove and Morris, the relation of landlord and tenant. We are to look at the intention of the parties. The instrument is not an agreement for a lease to be executed at a future time. It contemplated no new instrument. The premises demised were to be fitted for the use of the tenants and in part created, for the pier was to be created and raised above the waters of the river or bay, so that it might be fitted for human occupation. But when completed, the instrument took effect as a lease. The words used are words of present demise. "Kelsey agrees to let, and by these presents does let, unto said Ward, Gove and Morris the said addition to the pier," reserving rent. As soon as Ward, Gove and Morris entered upon the pier and took it into their possession the relation of landlord and tenant commenced, and existed at the time the summary proceedings were instituted. The agreement was not a grant of the right to take wharfage, which is an incorporeal right, but it was a lease of corporeal property for a term of years, carrying with it the right of occupation and enjoyment. The counsel for the relator argues that a wharf is a mere franchise to collect wharfage; that it belongs to the public at large for commercial purposes, and there is no element of property in it but the franchise to collect wharfage. This certainly is novel doctrine. The people of the state in their right of sovereignty are deemed to possess the original and ultimate property in and

The People *v.* Kelsey.

to all the lands within the jurisdiction of the state, lands above as well as below tide water. And may, through the legislative power, grant to private uses the one as well as the other. The state makes a grant of land covered with the waters of a bay or navigable river, and the grantee reclaims and raises it above the surface of the water. Why shall he not be invested with all the rights that pertain to the ownership of lands. The title of Charles Kelsey to the pier cannot, however, become the subject of inquiry here. Whenever the relation of landlord and tenant is made out, in summary proceedings to recover the possession of the demised premises, certainly the tenant is estopped from disputing the title of his landlord. (*Jackson* v. *Smith*, 7 *Cowen*, 717. *Jackson* v. *Spear*, 7 *Wend.* 401. *Ingraham* v. *Baldwin*, 5 *Seld.* 45.)

The counsel for the relators, upon the hearing, offered to show that the addition to the pier was not built by the defendant in a good and substantial manner, equal in any respect to the old pier as regards strength and good material. This evidence was objected to by the counsel for the landlord, and the objection sustained by the judge. The relators excepted to the decision. The failure to construct the pier in conformity with the stipulations of the agreement might have constituted a good defense to an action upon the lease to recover the rent. But it is no defense or answer to the claim of the landlord to have the possession restored to him. One of the questions of fact submitted to and affirmed by the jury is, that the tenants took possession of the demised premises, under the lease. They thus became vested with the term. They cannot now refuse to pay the rent, and at the same time retain the possession and enjoyment of the premises, against the claim of the landlord. They have their election to pay the rent or restore the possession when demanded. They cannot withhold both the rent and the possession. (*Lafarge* v. *Mansfield*, 31 *Barb.* 345. *Dingan* v. *Hogan*, 16 *How. Pr. Rep.* 164.)

When the evidence was closed and the questions involved were about to be submitted to the jury, the judge proceeded to charge them upon the law of the case. Whereupon the counsel for the tenants objected that there was no legal right vested in the magistrate, in summary proceedings, to charge the jury. Several questions of law arose in the progress of the trial, with which it cannot be supposed the jury were conversant, and which it was of some consequence they should rightly comprehend before they could act intelligently and sensibly. The defendant insists that they were not to obtain a knowledge of the law from the judge, and that whatever he said in respect thereto, however just and true, was an error for which this court should reverse the proceedings. This is a most extraordinary proposition. There is no express authority and direction contained in the statute concerning summary proceedings to recover the possession of lands, (2 *R. S.* 417,) that the judge shall instruct the jury upon the law. Nor is there any express words authorizing him to swear the witnesses, or to say what is to be received as evidence and what not, nor even to preserve order and decorum during the trial. Yet no one would think of disputing his authority to do all these things. Without it the trial could not proceed, and the remedies provided by the act could not be obtained. All these powers, as well as that to instruct the jury, are to be implied. Where the facts upon which the summons was issued are denied by an affidavit, the matters controverted are to be tried by the magistrate or by a jury, provided either party at the proper time demands a jury. (§ 34.) The matters controverted are those facts upon which the summons was issued and denied by the affidavit of the person in possession of the premises. The legal questions are still, however, to be determined, as all such issues are constantly determined, by the judge holding the court or conducting the proceedings. There is to be trial by a jury. Trial is the examination of the matter of fact in issue. "Trial by jury, called also trial *per pais* or by the country, a trial which

hath been used time out of mind in this nation, and seems to have been coeval with the first civil government thereof." (3 *Black. Com.* 349.) This commentator then proceeds to describe how the jury are to be summoned and selected, how the testimony is to be received and the witnesses examined, &c. and says: "When the evidence is gone through on both sides, the judge, in the presence of the parties, the counsel and all others, sums up the whole to the jury, omitting all superfluous circumstances, observing wherein the main question and principal issue lies, stating what evidence has been given to support it, with such remarks as he thinks necessary for their direction, and giving them his opinion in matters of law arising upon that evidence."

When our statutes speak of trial by jury, they mean a trial conducted in the manner described by the English commentator. Jurists and lawyers have no conception of a well conducted trial by jury, in which the charge of the judge upon the law of the case is omitted.

Numerous other questions were raised upon the hearing, which I decline to consider.

The proceedings should be affirmed, with costs.

