# PATRICK W. DUNNE

*v.*

# TRUSTEES OF SCHOOLS.

1. FORCIBLE DETAINER—*of the complaint.* There is no precise form for a complaint in this action, nor ought unreasonable strictness be required. It is enough, if the complaint show the relation of landlord and tenant to have existed, that the time for which the premises were let has expired, and that the tenant persists in holding the premises after demand made in writing for the possession thereof.

2. PRACTICE—*at what time objection must be taken to regularity of proceedings.* Where the defendant, in an action of forcible detainer, appears and goes to trial in the Circuit Court, without objection to the regularity of the proceedings, he thereby admits their regularity, and the validity of the demand of possession. An objection to the form and mode of proceeding cannot be made for the first time in the Supreme Court.

3. LANDLORD AND TENANT—*when the relation exists.* Where a party was permitted to go into possession of premises by the owner, without any terms of leasing being agreed upon, but under an agreement that the former would execute a lease for some definite time, which he afterward refused to do, and willfully remained in possession after having been duly notified to leave, and after demand in writing to quit and deliver up possession, it was *held,* the relation of landlord and tenant existed between the parties.

4. SAME—*tenancy at will—what constitutes.* Where a party is let into possession of premises under an agreement to take a lease, which he afterward refuses to do, he is a mere tenant at will after his refusal to make the lease.

5. NOTICE TO QUIT—*under the act of* 1861. The act of 1861, prescribing what notice shall be given a tenant in order to terminate the lease, has reference only to cases where the tenant holds over after his term is ended, and does not contemplate a tenancy at will.

6. A tenancy at will is terminated by a demand of possession, without any notice to quit.

7. Under the act of 1861, all tenancies less than one year and greater than one month, and a tenancy by the month, require thirty days' notice to terminate them. But it was not intended by that act to require a notice of thirty days to terminate tenancies less than one month.

APPEAL from the Circuit Court of Peoria county; the Hon. M. WILLIAMSON, Judge, presiding.

This is an action of forcible detainer, commenced before a justice of the peace in Peoria county, by the trustees of schools, township eight, north of range eight east, in that county, against Patrick W. Dunne. On appeal to the Circuit Court, a trial resulted in a verdict and judgment for the plaintiffs. The defendant brings the cause to this court by appeal.

The opinion of the court contains a sufficient statement of the case.

Messrs. JOHNSON & HOPKINS, and Messrs. O'BRIEN & CRATTY, for the appellant.

Mr. A. McCOY, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The first question presented by the record is, did the relation of landlord and tenant exist between these parties? This is to be determined by the complaint and the facts. The complaint is in the following words:

" John Hamlin, of the city and county of Peoria, being first sworn, says, that he is the treasurer of schools of Peoria township eight, north of range eight east of the fourth principal meridian in the said county of Peoria. And that on or about the 10th day of March, A. D. 1859, affiant, as the agent, and under the order and direction, of said trustees of schools, did demise and lease, to Patrick Dunne, of the city and county of Peoria, the following piece or parcel of land, viz.: Part of lot numbered twenty (20) in the subdivision of fractional section sixteen (16) in said township eight (8), north of range eight (8) east, situate in the said county of Peoria, beginning at a point on the lower side of Washington street, in the said city of Peoria, from which the north-west corner of said lot bears west 194 feet, thence down to the lower side of Washington 59½ feet, thence at right angles to Washington street 112 feet, thence parallel to Washington street 139 feet, thence at right angles toward Washington street to the north line of section (16) 38½, thence

west along the section line to the place of beginning (being that part of said lot [20] now occupied by said Dunne) which said lease was made by said trustees of schools until the said Dunne would execute a written lease to the said trustees of schools for some definite time. He further states that the said Dunne has refused to execute a written lease to the said trustees of schools, and still doth neglect and refuse to do so although often required so to do, and willfully and without force still remains in the possession of the said premises and holds over, although the said trustees of schools have notified him to leave, and still continues in the possession of the said premises without the permission of the said trustees of schools, notwithstanding demand has been made in writing by them upon the said Patrick W. Dunne, to quit and deliver up possession thereof to them, wherefore he prays that the said Patrick W. Dunne may be commanded to answer to this complaint.                    JOHN HAMLIN.

"Subscribed and sworn to, before me, this 3d day of December, 1863."

This court has held that there is no precise form for a complaint of this character, nor ought unreasonable strictness be required. It is enough, if the complaint show the relation of landlord and tenant to have existed; that the time for which the premises were let has expired, and that the tenant persists in holding the premises after demand made in writing for the possession thereof. *Smith* v. *Killeck and Wife*, 5 Gilm. 295. In this case the defendant had entered under an agreement to purchase, with the understanding if he failed to comply with the agreement, he should retain the possession until the rent amounted to enough to pay for the improvements he might make on the premises.

Does this complaint show such a relation? The complainant states that he, as agent for the school trustees, demised and leased to the defendant the premises in controversy; that defendant was in the occupancy of the premises; that the lease was made until or to such time as defendant would execute a

written lease for some definite time; and that defendant has refused, although often requested, to execute a written lease; and that he willfully remains in the possession of the premises, after having been duly notified to leave, and after demand, in writing, by the plaintiffs to quit and deliver up the possession.

To establish the complaint, Hamlin was examined as a witness for the plaintiff.

He says he was the agent of the plaintiff, and had been for a number of years, at a yearly salary. That some time in the month of March, 1859, the defendant came to his house, and informed him that Washington street was about to be opened through the lot of land that he, defendant, then occupied; that his house stood in the center of the proposed street; that he wanted to lease a piece of lot twenty, being part of the school section and the property of the plaintiff; that he wanted it for the purpose of moving his house upon it. Hamlin told him that the part of lot twenty, which he wanted, was for rent, and that he could have the piece so soon as he, Hamlin, could make out the papers. The defendant then said that he was obliged to move his house immediately, whereupon Hamlin told him he might move his house upon the piece of lot twenty, and that he would make out a written lease, as he had no printed blanks convenient. No terms of leasing were agreed upon.

No lease has ever been executed. Hamlin says he visited the lot some time in the spring thereafter, and found the defendant's house moved on the lot, and he occupying it; thinks he called on defendant two or three times that season to execute a written lease, but he failed to do it. At a subsequent time Hamlin thinks they agreed upon the amount of rent. He told defendant that he thought the property occupied by him was worth fifty cents per foot, to which defendant assented.

At one time, Hamlin says, when he called on defendant to execute a lease, he objected to do so until he could get the ground he occupied surveyed, and he promised to get it surveyed. Hamlin further states, he called on defendant a number of times afterward to see if he had a survey made and was ready to execute a lease, and found that he had not; thereupon,

some time in the summer following, he had a survey of the premises made by the city surveyor, a plat of which he took to the defendant, and requested him to execute a lease for the premises according to the plat, but defendant objected to this, on the ground that he wanted to have the title examined, and that he had employed an attorney to examine the title. Some time afterward, Hamlin states, he made out a lease for the premises, with the first name of the defendant left blank, as it was not known to him, and gave it to the defendant's attorney with a request that he would procure the defendant to execute it. This was returned to Hamlin in a few days afterward unexecuted. There were no terms of tenancy agreed on at any time; no rent was collected from the defendant or demanded, for the reason, as Hamlin states, that he did not want to do so until a lease was executed, as he did not wish to do any thing to acknowledge a leasing on his part until the lease was executed.

Though there is an indefiniteness as to dates, as to the precise time when these various matters occurred, we think enough is shown to establish the relation of landlord and tenant. The defendant went into possession under the plaintiffs, and was to be a party to a written lease. The defendant has never executed any lease, but has continued to occupy the premises on this promise to take a written lease, more than four years before this action was brought, and has paid no rent, nor has any been demanded of him. The relation of landlord and tenant existing, the next question is, what was the nature of the tenancy.

It is contended by the appellant, that the facts show a tenancy from year to year. We understand to constitute such a tenancy there must be at least a stipulation to pay or an actual payment of rent to the lessor, and a term agreed upon. 4 Kent's Com. 115. There must be either payment of rent or an admission that rent is due. *Cox* v. *Bent*, 15 E. C. L. 533. In *Rogers* v. *Patten*, 29 id. 745, where a tenant was let into possession under a conditional promise of a lease, he was held not to be a tenant from year to year.

The possession of the defendant here was on his promise to execute a lease, which, when demanded, he did not do. It is like the case of a party being let into possession of land under a contract to purchase, which is not afterward completed. In such case the party entering holds at the will of the owner. Archbold on Landlord and Tenant, 28 Law Library, 205. We can perceive no difference between entering under a contract to purchase and under an agreement to take a lease, and therefore must consider this as a mere tenancy at the will of the lessor after refusal by the tenant to make a lease.

If this be so, to what notice was the defendant entitled?

It is claimed by his counsel, that under the second section of the act of 1861, in relation to landlord and tenant, he was entitled to thirty days' notice to quit. That section is as follows:

"In all cases of tenancy by the month, or for any other term less than one year, where the tenant holds over without special agreement, the landlord shall have the right to terminate the lease by thirty days' notice in writing, to be served by copy, and to maintain an action for forcible detainer." (Sess. Laws 1861, p. 137.)

This has express reference to a tenant holding over after his term is ended, and running into another term, from which an implication would arise of a leasing for another term of the same duration as the first. As if a tenant by the month holds over so long into the succeeding month as to give rise to the presumption of a leasing for that month, he is entitled to thirty days' notice. No term having been fixed or agreed upon in this case, there could be no holding over. The right to hold terminated on his refusal to execute a written lease in a reasonable time after request.

We agree with appellee's counsel that this act does not contemplate a tenancy at will, as, in that description of tenancy, there is never any term agreed upon, and could not be, from its very nature. Nor did the legislature mean, by that act, to require a notice of thirty days to terminate tenancies less than

one month. That would be absurd. The proper construction of this statute is, as contended for by appellees, that all tenancies less than one year and greater than one month, and a tenancy by the month, require thirty days' notice to terminate them.

It being a tenancy at will, a demand of possession terminated it without any notice to quit. *Nicholl* v. *McKeag*, 21 E. C. L. 154. A notice of ten days was, however, given in this case, which was a reasonable notice.

This view of the case renders it unnecessary to consider the instructions, as they all proceed upon a theory wholly different.

No objection was made in the Circuit Court to the form and mode of proceeding, and consequently none can be urged here for the first time. Appearance and going to trial were an admission of the regularity of the proceedings, and of the validity of the demand of possession.

The judgment must be affirmed.

*Judgment affirmed.*