## WEED v. LINDSAY & MORGAN.

Tenants being admitted into possession under a written contract for a lease for the term of ten years, cannot, after refusing to execute and accept a lease tendered by the landlord, and embracing the terms and conditions specified in the written contract, retain possession of the premises because the landlord has not complied with the contract in the construction and finish of the building which he was to erect for occupation by the tenants. The landlord's violation of his contract would furnish a cause of action in favor of the tenants for the damages sustained thereby, but would not operate as a license to occupy and use the premises. After refusal to execute and accept the lease tendered, they would be mere tenants at will, and after two months notice, would be subject to eviction, by summary proceedings provided by statute, as tenants holding over.

January 11, 1892.

Landlord and tenant. Contract. Action. Before Judge HARDEN. City court of Savannah. July term, 1891.

Dispossessory warrant was issued against Lindsay & Morgan on the affidavit of Weed, landlord. By coun-

ter-affidavit they alleged that their lease, or term of rent, had not expired. The verdict was in their favor; plaintiff's motion for a new trial was overruled, and he excepted. His affidavit, dated October 15, 1890, alleged that the property was rented to them, and they took possession in October, 1889, as tenants at will; that on April 8, 1890, he gave them notice that he desired the possession of the property at the expiration of two months thereafter, by which notice and the expiration of time the tenancy was terminated and the lease expired; and that afterward they refused to deliver the possession to him. The evidence shows that the parties made the following contract:

"SAVANNAH, GEORGIA, 4th June, 1889.

"I am to erect a four-story building, sixty feet or more front, and Messrs. Lindsay & Morgan agree to pay me four thousand dollars per annum net, if the cost of the building at six per cent., with a valuation of forty thousand dollars for the lot, viz.: Lot No. 1, Eyles Tything, Heathcote Ward, does not exceed that amount. If it does, then Lindsay & Morgan are to pay Joseph D. Weed six per cent. on the cost, including above valuation of lot. Lindsay & Morgan are to pay all taxes, keep the building in repair, and keep building insured for its cost. Upon these conditions Joseph D. Weed agrees to give them a lease for ten years from the date the building is ready for occupation.

(Signed)　　　　　　　　　JOSEPH D. WEED.

LINDSAY & MORGAN."

The defendants claimed that they had an agreement with the plaintiff that the building would be first-class, attractive and well suited to their business, and that he agreed with them expressly as to many details of its construction and plan. It was thought it would be completed by September, and the plaintiff stated that his contractor was under a forfeit for every day's delay after the 1st of October. In the latter part of September the defendants' goods, previously ordered, began to

arrive in large quantities, and they obtained plaintiff's consent, as shown by his letter quoted in the opinion, to store the goods in the unfinished building, only the basement then being completed. Defendants paid the contractor the amounts he was compelled to pay the plaintiff for each day's delay after October 1st until the completion of the building on November 13th. During its erection defendants complained to the plaintiff, and to his superintendent in his absence, that it was not being constructed according to agreement. A few days after its completion the plaintiff tendered the defendants a lease for ten years, stipulating an annual rental of $4,000, which defendants refused to sign, on the ground that the building was not completed according to agreement, but was much inferior to what they were entitled to receive; that the difference in this respect should be met by a reduction of rent; that they were compelled to take and retain the building, as no other could be obtained, and to give it up would destroy their business and ruin them financially. They offered to submit to arbitration, or have determined by any fair and proper mode, what reduction of rent would compensate them in damages. They paid the taxes on the property until the tax-collectors refused to receive the same, on notice from plaintiff; and offered to pay the insurance, which plaintiff refused to allow. On December 16, 1889, plaintiff instituted in the city court distraint and dispossessory warrant proceedings, which were met by the usual counter-affidavits, and by defendants' equitable pleas alleging that under the contract the rent was not due until the end of the year, setting up the failure to construct the building according to agreement, and claiming that an annual reduction of $1,500 from the stipulated rent should be made on account of said failure. The two cases were tried together by consent, and in each the jury found for the

defendants, further finding in the distress warrant case, that a deduction of $500 per annum should be made from the rent stated in the contract, and that no rent was due until the expiration of the year. A new trial was granted on plaintiff's motion; and he afterwards dismissed both the cases, and on October 15, 1890, brought the present proceeding. On November 13, 1890, the defendants tendered him $3,500 as the first year's rent due that day, offering to accept the verdict of the jury as an arbitrament of the issues, and further offering to pay the taxes and insurance, and to execute a lease on the basis of the reduced rent. On December 26, 1890, they filed in the superior court a petition to enjoin this dispossessory warrant proceeding, to have their damages ascertained and fixed by decree, to compel execution of a lease in accordance therewith, etc. No restraining order was granted, but the judge issued a rule to show cause; and the plaintiff showed cause by his answer. This petition and answer were introduced in evidence on the trial of the present case.

Among the grounds for new trial were, that the verdict was contrary to law and evidence; that the court erred in admitting testimony to establish a parol contract on the part of plaintiff to erect a building of specific character and dimensions not set out in the written contract between the parties; and that the court erred in refusing to charge certain principles as requested by the plaintiff's counsel. Also, that the court erred in giving, among others, the following charges:

"The view which I hold of this contract is this: The parties entered into or upon these premises under an agreement for a lease. If the agreement had never been carried out to make a lease, if the parties had occupied the building, and the building was such as they had the right to expect, and if they paid up the rent, and Mr. Weed had accepted the rent, and a

v 88-44

lease had never been made, then this paper would have stood in the place of a lease. They would have been tenants for the length of time mentioned in this paper, and they would have had this paper as by its terms to govern the holding which they had. If, however, they failed to pay the rent which was reserved to be paid in this paper, and failed to pay it for a reason which you find to be a good and valid reason, if you find that the amount of four thousand dollars a year was not a proper amount for them to pay because of the failure, on the part of Mr. Weed, to furnish them with such a building as they had under the circumstances the right to expect, then you must also find that they had, and I so charge you, the right to refuse to pay the entire amount of the rent, and to leave it to the courts to determine, if the parties could not agree as to what amount of rent should be paid, without their becoming tenants at will and liable to ejectment.

"If they held the building and refused to pay the rent, being unjustified in so refusing, they are tenants at will, and you must by your verdict find for the plaintiff. If, on the other hand, they acted upon their right to occupy the building, or not to occupy it, if they were in the right in refusing to pay because the rent was not due, or because the amount of rent which was claimed was not due, and they withheld it because the building was necessary to them, and because it was not reasonably suited to their purposes, refused to pay the entire amount of rent demanded, if you find these to be facts, then it will be your duty to find for the defendants.

"If you find from the testimony that Mr. Weed agreed to erect for Lindsay & Morgan a certain kind of a building, and that he did not comply with his contract, but erected one that was inferior to the

building he contracted to furnish and less valuable, then Lindsay & Morgan would have the right to have the rent, which they agreed to pay, reduced by such an amount as would compensate them for the damages which they sustained by reason of Mr. Weed's violation of his contract, provided, of course, Lindsay & Morgan make it appear to your satisfaction that they have sustained such damages. If, therefore, the testimony shows that Mr. Weed thus violated his contract, and if no lease was tendered to Lindsay & Morgan until after the building was completed, then they were not under any obligation to sign a lease providing for the four thousand dollars net rent, but were entitled to a lease at such a reduced rent as would compensate them, or measure the difference in the rental value between the building which Mr. Weed contracted to furnish and the building which they actually got.

"If you find from the testimony that a lease was tendered by Mr. Weed to Lindsay & Morgan after the completion of the building, and with the rental of four thousand dollars net provided therein, and if you further find from the testimony that Lindsay & Morgan were not liable for this amount of rent, but were entitled to an abatement of it, and if you further find from the testimony that Mr. Weed was unwilling to give a lease for any less rent, and that Lindsay & Morgan rightfully and properly refused to sign the léase, then said refusal on their part did not forfeit their rights under their contract, and did not make them tenants at will.

"If you find from the testimony that Lindsay & Morgan have performed, or have been ready and willing and offering to perform all their obligations under their contract with Mr. Weed, and that they are entitled to a lease of the premises for the term of ten years from the completion of the building, then it is not necessary for them to quit the possession of said premises until the

courts can decree the specific performance of the contract, but they have the right to remain in possession and cannot be dispossessed as tenants at will."

GEORGE A. MERCER, for plaintiff.

DENMARK, ADAMS & ADAMS, for defendants.

BLECKLEY, Chief Justice.

The contract of June 4, 1889, signed by the parties respectively, a copy of which is in the report, was not a present demise or lease which granted to Lindsay & Morgan an immediate estate for years, but was an agreement to give them a future lease for ten years from the time the building to be erected was "ready for occupation." It is plain from the nature of the agreement and the language of the instrument that the contract was executory on both sides. It was not contemplated that Lindsay & Morgan should become tenants to Weed, or owners of any interest in the premises, or that they should be liable for the payment of the stipulated rent, if Weed did not erect the building and make it ready for occupation. Until that time should arrive, they were to remain without any interest in the property whatever. If the building, as they contend, has not yet been completed and made ready for occupation according to the agreement, the time appointed for an interest to vest in them as lessees, and for their occupation to commence, has not yet arrived; and so they are without any legal ownership of an estate for years, or of a right to possession by virtue of such ownership. The instrument executed as evidence of the contract contains no words of present demise or any equivalent terms, nor does it fix with certainty either the amount of the annual rent to be paid, or appoint any time for the completion of the building and the consequent commencement of the ten years term. The amount of the rent was to, or might, depend in part upon the cost of

the building, and when the building would be ready for occupation would necessarily depend on contingencies to be met and dealt with after the agreement was signed. It is manifest that the words, "Upon these conditions, Joseph D. Weed agrees to give them a lease for ten years from the date the building is ready for occupation," ought to be construed, not as a stipulation for further assurance, but as an undertaking to create a lease not previously existing, and to pass by it an estate not before conveyed nor attempted to be conveyed. It could not have been the intention of the parties either that Lindsay & Morgan should be owners of the contemplated term of years, or any term in the premises, before the annual rent which they were to pay began to accrue, or that this rent was to begin to accrue before the building was ready for occupation. In distinguishing between a lease and a mere executory agreement for a lease, the intention of the parties, as manifested by the writing, is a controlling element. Lloyd, Law of Building and Buildings, §88; 12 Am. & Eng. Enc. of Law, 980; 1 Wood, Land. and Ten. §179; McAdam, Land. and Ten. §41; 1 Taylor, Land. and Ten. §37 *et seq.*; 6 Lawson, Rights, Rem. and Pr. §2801. For cases illustrating the distinction, see: Sturgion v. Painter, Noy's Rep. 128; Jackson v. Ashburner, 5 Term Rep. 163; Hegan v. Johnson, 2 Taunt. 148; Jackson v. Bulkley, 2 Wend. 433; People v. Kelsey, 38 Barb. 269, 14 Abb. Pr. 372; McGrath v. City of Boston, 103 Mass. 369; Adams v. Hagger, L. R. 4 Q. B. Div. 480; Jackson v. Kisselbrack, 10 Johns. 336; Kabley v. Worcester Gas Light Co., 102 Mass. 392.

No lease creating a term of ten years and vesting the same in Lindsay & Morgan having ever come into existence as contemplated by the agreement, what was the effect of admitting them into possession by virtue of the consent given by Weed in his letter to them of Septem-

ber 27th, 1889, in which he says, "I simply write to tell you, as Mr. Brown told me you wished to begin to occupy the building before it was entirely finished, that the rent will begin from the time you begin to occupy it. I have no objection whatever to your moving into the building as soon as you find it can serve your convenience to do so." (Mr. Brown was the contractor employed by Weed to construct the building.) Was this permission a license to occupy for ten years without the execution of any lease, or was it, as events turned out (possession having been taken under it and Lindsay & Morgan having afterwards refused to join in the execution of a lease), the creation of a tenancy at will? We think it was the latter; and no rent having at any time been paid and accepted, this is in accordance with the current of authority. 1 Taylor, Land. & Ten. §60; 1 Wash. Real Prop. *376; Tied. Real Prop. §216; 6 Lawson, Rights, Rem. & Pr. §2809; 12 Am. & Eng. Enc. of Law, 670; Chapman v. Towner, 6 M. & W. 100; Anderson v. Midland Ry. Co., 3 E. & E. 614; Anderson v. Prindle, 23 Wend. 616; Dunne v. Trustees, 39 Ill. 578. In Hamerton v. Snead, 3 B. &. C. 483, Littledale, J., said: "Where parties enter under a mere agreement for a future lease, they are tenants at will; and if rent is paid under the agreement, they become tenants from year to year, determinable on the execution of the lease contracted for, that being the primary contract." Perhaps, as the law of remedy in the superior court now stands, the payment of rent would have raised, not merely a tenancy from year to year, but one for the whole term covered by the lease. Walsh v. Lonsdale, L. R. 21 Ch. Div. 9. It is plain that, consistently with the written agreement of the parties, Lindsay & Morgan would have no right to occupy and use the premises for ten years unless they were willing to pay therefor the stipulated rent, nor unless they were will-

ing to occupy as lessees and not merely as tenants at will. In this litigation they seek, as they did in some of the preliminary steps which led to it, to take the position and have all the rights of lessees on terms different from any which Weed has ever assented to ; that is, they want to hold at a less annual rent than they have agreed to pay.* They make this claim because, as they contend, Weed has not erected and made ready for occupation such a building with respect to plan and finish as was contemplated. If this contention be well founded in fact, the result would be, not that they could occupy for ten years on terms different from those agreed upon, but that they could, if they did not choose to waive their objection and unite in the lease and pay the stipulated rent, exercise their option between vacating the premises and compelling, by a proper equitable action, a specific performance on the part of Weed of his undertaking. Weed's violation of his contract would also furnish a cause of action in their favor for any damages resulting from his failure to comply. Perhaps if they had, under protest, paid rent according to the contract, they might have done so without surrendering any substantial right, legal or equitable. Lamare v. Dixon, 6 L. R., H. L., Eng. & Ir. App. 514. When this proceeding was commenced, they had not pursued any course open to them, but had endeavored to pursue one not open; they had declined to. join in the lease ; had not paid rent at the stipulated rate ; had entered no suit for specific performance, and had refused to vacate the premises. Having brought themselves into the position of mere tenants at will, section 2291 of the code applies to them. The two months notice having been given, they were subject to eviction as tenants holding over. Code, §§4077–4081. The pleadings in the case were simply the affidavit and counter-affidavit provided for by the sections of the code last cited. The pending

application in the superior court to enjoin the prosecution of this proceeding was not operative, because no injunction, temporary or permanent, had been ordered, nor any restraining order granted.

What we have ruled embraces all that is fundamental in the case, and effectually controls the final result of this proceeding in the city court. 'The court erred in not granting a new trial.        *Judgment reversed.*