(43 South. 277.)

No. 16,353.

## STATE v. G. H. TICHENOR ANTISEPTIC CO.

(March 4, 1907.)

LICENSES—EXEMPTION OF MANUFACTURERS.

One who, by extracting the medicinal properties from various drugs and making a chemical combination in which the ingredients lose their identity, creates a distinct product, which, for years, is offered to, and accepted by, the public for distinct uses, may be regarded as a manufacturer. And, where it appears that the formula for the manufacture of such product is a secret, which has cost him a large sum of money, he ought not to be compelled to disclose it in order to obtain the exemption from license taxation accorded by the Constitution to manufacturers.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the state against the G. H. Tichenor Antiseptic Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Gilbert Louis Dupre, Jr., and Edward Rightor, for appellant John Fitzpatrick, State Tax Collector. Denègre & Blair, for appellee.

## Statement.

MONROE, J. The state demands that defendant, as a wholesale dealer, shall pay a license tax, and defendant resists the demand, on the ground that, as a manufacturer, it is exempted from such tax by article 229 of the Constitution. The article mentioned exempts from the license tax all "manufacturers, other than those of distilled or malt liquors, tobacco, cigars, and cotton seed oil," and it, of course, devolved upon defend-

ant, claiming the benefit of such exemption, to show that it is a manufacturer of some product other than those which are excepted from the exemption. This we think it has done.

The president of the defendant company testifies that the company is engaged, exclusively, in the manufacture and sale of "Tichenor's Antiseptic"; that the Antiseptic is a chemical combination, and is, and has been, for 30 years, a distinct article of commerce, which is sold throughout the whole United States, in England, and Africa, and in all the countries of Central America; that the plant of the company consists of a square of ground and building thereon, with improved machinery and apparatus; and that it employs about 30 persons. Asked to describe, in a general way, how the article is produced, the witness replies:

"Why, certain drugs are taken, or, I should say, are subjected to treatment by alcohol and allowed to stand for a period of something more than two weeks, in order to extract the medicinal principles, and that combination is filtered, drawn off, and then additional chemicals are added to what we call the base, and, after the perfecting of a solution, it is again filtered and drawn off and put into bottles."

He is further interrogated, and responds (in the course of his examination) as follows:

"Q. Is the formula a secret? A. Yes, it is, sir. Q. Who is in possession of the formula? A. The Hibernia Bank & Trust Company. * * * Q. Your company does not know the secret of the combination? A. Not absolutely. We have all but one or two minor ingredients, and these we have not. Q. From whom did you purchase the right to make this Antiseptic? A. We purchased the contract between the Sherrouse Medicine Company and Dr. George H. Tichenor. Q. Is Dr. George H. Tichenor in your employ? A. Yes, sir. Q. And, from his head, he furnishes the secret ingredient? A. Yes, sir. Q. Have you any objection to stating some of the ingredients? A. Well, alcohol is one, oil of peppermint is another; but, to go further, I will say there are several ingredients that I do not care to publish. Q. Are there many ingredients used? A. Yes, at least six. Q. When the process is completed, state whether or not the original ingredients lose their identity? A. Entirely so. The various ingredients lose their identity. They are not the same in color, or odor, or taste, and it is the com-

bination of these ingredients that makes up the Antiseptic proper. Q. So the resulting mixture has new qualities, not possessed by the original? A. Yes, sir; exactly. Q. It has a new form? A. Yes, sir. Q. A new shape? A. Yes, sir. Q. What is the result? A solid or liquid? A. A liquid. Q. What about the uses? A. There are many. Q. Different from the uses of the raw material? A. Yes, sir; very much. * * * Cross-Examination: Q. You say that Dr. Tichenor's Antiseptic, Mr. Parker, is made, or compounded, from several drugs? A. Yes, sir. Q. What are those drugs? A. If your honor please, I paid $50,000 for this formula. Am I compelled to answer this question? By the Court: The court does not think that he should be compelled to answer the question. * * * By Defendant's Counsel: Q. I understood you to say, in your direct examination, didn't I, that those ingredients were solids as well as liquids? A. Yes, sir. Q. And the resulting compound is— A. We extract from the solids the active medicinal principles."

There is no other evidence in the record, save the charter of the defendant company, which throws no light upon the question here at issue, and the case is presented to this court by the appeal of the state from a judgment rejecting its demand.

### Opinion.

Unless we reject the only testimony that has been adduced, as unworthy of belief or insufficient, the judgment appealed from must be affirmed, since, according to that testimony, the defendant company, and its product, fall within the commonly accepted definitions of the words "manufacturer," and "manufactured." This court, in the comparatively recent case of State v. Sugar Refining Co., 108 La. 603, 32 South. 965, has made the following, with other, excerpts in support of its opinion and decree, to wit:

"A 'manufacturer' * * * is one who gives new shapes, new qualities, new combinations, to matter which has already gone through some artificial process." City v. Le Blanc, 34 La. Ann. 597; City v. Ernst, 35 La. Ann. 746.

"Nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes derived and directed by human skill, or by the employment of machinery, * * * are now commonly designated as 'manufactured.'" Car-

lin v. Western Assur. Co., 57 Md. 526, 40 Am. Rep. 440.

"The production of articles for use from raw or unprepared materials, by giving these materials new forms, qualities, properties, or combinations, whether by manual labor or machinery." Century Dic., verbo "manufacture."

Counsel for the state say, in their brief:

"Did we admit those facts [i. e., the facts sworn to by the only witness who was examined in the case], or Mr. Parker's right to draw the conclusions, this suit had never been filed. It does not appear from the evidence that Mr. Parker is an expert chemist, or that he is a chemist at all. It simply appears that he is a rich man, president of a large corporation."

The witness was not asked whether he was a chemist, but he testifies that he paid $50,000 for the formula (or part of the formula) by which Tichenor's Antiseptic is prepared; that he is president of the corporation which prepares it; and that the corporation has a large plant devoted to, and some 30 persons employed in, its preparation. It does not, therefore, appear to be remarkable that he should know something of the manner of its preparation, and of the effect, so far as its ingredients are concerned. At all events, his character for veracity is unimpeached, and he was not even cross-examined upon the subject of his qualification to testify upon those matters. The learned counsel also say:

"We have no objection to Mr. Parker refusing to divulge his secret. We simply say: 'Take your choice. Keep your secret, and pay the license paid by other wholesale dealers; or, disclose your secret, and prove that you are the manufacturer of a liquid, neither malt nor alcoholic.'"

As we look at the matter, however, the witness could not, reasonably, be expected to disclose a secret which has cost him $50,000 in order to escape a license tax of $50 a year; and yet, if he is a manufacturer of a product other than distilled, alcoholic, or malt liquors, tobacco, cigars, or cotton seed oil, he is certainly entitled to exemption from

that tax. As to the possibility that the Antiseptic may be any one of the articles enumerated, it will be remembered that the witness testifies that it is made by treating certain drugs with alcohol, thereby extracting the medicinal properties, filtering the product adding other chemicals, and filtering again—a process which, as we take it, would not produce those articles, or either of them. Moreover, the testimony goes to show that the product in question is, and has been, for many years, offered to, and accepted by, the public, as an antiseptic, and it is hardly to be supposed that, if it were merely alcohol, beer, or wine, the deception would not have been discovered.

Upon the whole, we are of opinion that the case has been correctly decided.

The judgment appealed from is therefore affirmed.