No. 3747

Second Circuit

INTERNATIONAL HARVESTER CO. OF
AMERICA, INC., v. SHREVEPORT NU-
GRAPE BOTTLING CO., INC.
B. A. BASS, Intervener and Third Opponent

(March 24, 1930. Opinion and Decree.)
(April 10, 1930. Rehearing Refused.)

Dickson & Denny, of Shreveport, attorneys for plaintiff and defendant, appellee.

Harry V. Booth, of Shreveport, attorney for intervener, appellant.

DREW, J. On June 16, 1927, the International Harvester Company of America and others filed petition as creditors of the Shreveport Nu-Grape Bottling Company, Inc., alleging that the defendant's property had been abandoned, and praying for a receiver to be appointed to operate the defendant company as a going concern. A receiver was appointed and operated the bottling plant for a period of practically one year. On June 16, 1928, the receiver, by petition to the court, set out the necessity for selling the property of the defendant company to pay debts, and on June 29, 1928, judgment was signed ordering the property sold to pay the debts. On July 12, 1928, B. A. Bass filed a petition of intervention and third opposition, alleging

that on or about February 19, 1925, he had entered into a contract with W. D. Glasscock, M. E. Glasscock, G. N. Evans, and B. C. Clardy, whereby intervener agreed to construct a building to be located on lots Nos. 1262 and 1263 of Cedar Grove addition to Caddo parish, La., and in consideration thereof the parties last named agreed to form a corporation, which corporation was to lease said premises for a period of five years, beginning March 15, 1925, for the agreed stipulated rental of $90 per month, payable monthly, in advance, on the 15th of each month; that the building was erected, and the parties above named formed and executed a corporation known as the Shreveport Nu-Grape Bottling Company, Inc., said corporation going into possession of said building under the above agreement; that the corporation kept and performed the obligation of the incorporators thereof under the agreement until said corporation was placed in the hands of a receiver; and that said receiver had met the terms and paid the rentals under said contract since the occupancy of said premises.

Intervener further alleged that said agreement contained a stipulation and obligation on the part of intervener that he should execute a formal act of lease to the corporation after its execution, according to the terms of the agreement; that he offered to execute such a lease to the officers of the corporation subsequent to the formation of the corporation, but that said officers declared the execution of such lease was unnecessary. He further alleged that twenty months' rent under said contract remains unpaid and due, and prayed for judgment for $1,800, and for recognition of his lessor's lien and privilege, and that he be paid said amount out of the proceeds of the sale of the property of de-fendant company in preference to all other persons.

The funds were ordered held by the receiver until further orders of the court and pending final judgment in this suit.

The receiver filed an exception of no right or cause of action which was tried and overruled. There was no answer to the appeal, and therefore that exception is not before us.

On February 12, 1929, intervener filed an amended and supplemental petition wherein he alleged that the principal purpose of the corporation was manufacturing soft drinks, to be sold at wholesale; that the parties who entered into the agreement with him were the incorporators and only subscribers to stock of the corporation, and that said corporation kept and performed the obligations of said incorporators, and in return accepted the benefits flowing from said contract; and further alleged ratification and acquiescence in the contract by the corporation; that said contract was at all times relied upon and acted upon by the corporation and intervener. He alleged that the receiver at the time he took charge of the premises well knew of the contract for a five-year lease and acted thereon in paying the rent for one year, thereby acquiescing in the contract with full knowledge of the existence of said agreement. He amended his prayer, and prayed for the sum of $1,449.44.

An exception of vagueness was filed by the receiver, which was overruled; there has been no answer to the appeal, and the exception is not before us.

The answer of receiver is a general denial, alleging that he used said premises on a month-to-month lease, and has never

consented to occupy the building on any other kind of lease, and that he has paid more than twelve months' rent. He alleges in reconvention that he paid back rent of the corporation to the amount of $280, which amount he prays to recover in reconvention.

The lower court rendered judgment rejecting intervener's demands; it is silent on the reconventional demand, which amounts to rejection. From this judgment intervener appealed, which appeal has not been answered by the receiver therefore only the main demand of intervener is before us for decision.

Intervener applied for rehearing in the lower court before taking appeal, and, in overruling the application, the judge of the district court rendered a written opinion. We have given careful study to this opinion.

The following agreement was entered into and is the basis of this suit:

"This agreement, made and entered into this 19th day of February, 1925, by and between B. A. Bass, of Cedar Grove, Louisiana, party of the first part, and W. D. Glasscock, M. E. Glasscock, G. N. Evans and B. C. Clardy, all of San Antonio, Texas, parties of the second part, witnesseth:

"That the party of the first part hereby agrees to erect on the lands and premises hereinafter described a building in accordance with the plans and specifications hereto attached and made a part hereof. That the walls, roof and floor of said building shall be completed by the 15th day of March, 1925, and be ready for the installation of machinery therein on said date. That said building shall be connected with the sewer system, gas and electric lines and water system of the city of Cedar Grove, Louisiana, by said first party and shall be completely finished and ready for occupancy on the 25th day of March, 1925.

"The land on which said building is to be erected is the forty-foot strip across the north ends of Lots numbered 1262 and 1263 between 70th and 71st Streets, and said building is to front on Southern Avenue, situated in the said City of Cedar Grove, state of Louisiana.

"The parties of the second part agree that they will within ninety days from date hereof, form a corporation either under the laws of the State of Texas or of the State of Louisiana, for the purpose of the conducting by said corporation of a bottling business within said building.

"The party of the first part agrees that he will, as soon as said corporation is formed and legally authorized to transact business within the State of Louisiana, make, execute and deliver to said corporation a lease on the above bounden and described premises, which said lease shall run for a period of five years from and after the 15th day of March, 1925. The rental shall be $90.00 per month, payable monthly, by said corporation, in advance on the 15th day of each and every month during the life of said lease. The lease shall also provide that said corporation shall surrender up possession of said premises, peaceably and quietly, at the expiration of the lease, in as good condition as the same shall be at the date of assuming possession thereof, reasonable wear and tear thereof and damage by fire and the elements excepted.

"It is understood and agreed that at the date of the execution of this contract, the second parties have deposited in the Cedar Grove State Bank, of Cedar Grove, Louisiana, the sum of $1,000.00 to be held by said Bank as an escrow and is to be delivered to said first party when said building is in condition for the installation of Machinery as hereinbefore specified. The said $1,000.00 shall be credited on the rental and shall be in full payment thereof commencing March 15th, 1925, until the full amount of said deposit, both principal and interest, is exhausted at the rate of $90.00 per month as above provided. The said $1,000.00 shall bear interest at the rate of 8% per annum from the 15th day of March, 1925, but as each installment of rent falls due, interest on that installment shall cease. It is understood that the second parties may take possession of the premises as soon as same shall be ready and operate under this

agreement until said corporation is formed and said lease executed and delivered. It is further agreed that should the building not be ready for occupancy at the time herein provided, proper deduction at the rate of $90.00 per month will be made for the time second parties are deprived of possession.

"In witness whereof, the respective parties have signed these presents this 19th day of February, 1925."

The agreement was signed by all parties whose names are set out in the beginning and in the presence of two witnesses.

Intervener constructed the building in accordance with plans and specifications, and undoubtedly to the satisfaction of the parties to the agreement, as there is no evidence of any complaint in that respect. The building was completed before the expiration of the time set in the contract of agreement and delivered into the possession of the lessees. On the 19th day of March, 1925, articles of incorporation were executed, the incorporators being the four whose names were signed to the agreement of lease and one C. M. Cornett; and the stock of said corporation was subscribed to as follows:

B. C. Clardy_____49 shares
G. N. Evans_____50 shares
W. D. Glasscock_____50 shares
M. E. Glasscock_____50 shares
C. M. Cornett_____ 1 share

The evidence shows that Cornett was only a party interposed for the purpose of executing the corporation, and that the entire stock of the corporation was subscribed to and owned by the four parties who entered into the rent agreement with intervener. They were all thoroughly familiar with that contract, and the contract itself contains all the provisions necessary to be in a contract of lease.

Intervener contends that, subsequent to the date of execution of the corporation, he discussed with each of the subscribers of the stock of the corporation the question of having a formal lease signed and executed in accordance with the agreement, and was informed by all of them that it was unnecessary; that, the defendant, through its officers and board of directors, being the above-named parties, said the lease contract was good enough for them, and did consider it a lease in itself; they kept the said contract in the safe of the defendant corporation, and complied with its terms and amounts even to the date of the monthly payments for a period of about two years, and the evidence is that, as long as the parties named above owned the stock of the corporation, there was never any question about the lease being for a term of five years.

Intervener's contention is strongly corroborated, and, we think, conclusive as to the intention of the corporation, by a resolution passed by the board of directors of the defendant corporation on the 19th day of March, 1925, whereby the assets of the partnership, consisting of the four named parties who signed the rent agreement and the property that was turned over to the corporation by them, were appraised and paid for in stock, in which the following item is listed: "Deposit on rental contract (being a five-year lease) $1,000.00."

The resolution authorizes the officers of the corporation to issue stock in payment of the above-described property. The corporation, by this resolution, actually bought the rent contract and paid for it, and described it as a "five-year lease." We do not think the corporation could successfully deny its own resolution, and we do not find in the evidence that any officer or director of said corporation, at that

time, did deny or contend anything other than that the corporation had a five-year lease on the property of intervener.

It is contended that this corporation had no officers, and that the articles of incorporation expressly state that the business of the corporation shall be conducted by a board of directors of five. The evidence in this case shows that there were only five stockholders in the corporation, and one of them interposed; however, the by-laws of the corporation provide for officers and show the election of officers, president, vice president, secretary, and treasurer—all to be elected from the directors. Whether they were legally officers of the corporation or not is of no moment here; they at least acted as officers, and were so considered by the stockholders and board of directors of the said corporation.

Intervener testified that one of the officers of the corporation and some member of the board of directors offered to pay him $2,000 to cancel the lease, in order that they might acquire a place elsewhere. The district judge did not give this testimony any weight, as it was not corroborated by anyone, and no questions asked of those whom he claimed made the offer. However, it was denied, and, when we consider that the directors did consider that they had a five-year lease, which is clearly shown by the testimony and resolution of said board, the evidence is not unreasonable.

About two months before the corporation was put in the hands of a receiver, the stock of the original incorporators was all sold to N. M. Vogelsang, who was appointed receiver. The testimony is conflicting in regard to his knowledge of any lease, other than from month to month; however, the minutes of the corporation were in his possession, and it is fair to say that the minute book only contains five or six pages of minutes which should have shown him that the corporation had a five-year lease—or at least thought it had.

However, the fact that he bought the stock of the corporation would not in any way bring to an end a contract of the corporation then existing.

We think the test in this case is: Could the lessor have evicted the lessee after it took possession and complied with the terms of the written agreement by paying the rent of $90 per month on the 15th of each month in advance? We think not.

"A valid written agreement for a lease, where the lessee has entered into possession, the lessor may be enjoined from evicting him." 16 R. C. L. 27; Weed vs. Lindsay, 88 Ga. 686, 15 S. E. 836, 20 L. R. A. 36.

"If the agreement for a lease is in writing and may be specifically enforced, the proposed lessee is regarded in equity as holding under the same terms as if a lease had been granted." 16 R. C. L. 25; Weed vs. Lindsay, 88 Ga. 686, 15 S. E. 836, 20 L. R. A. 33.

All the terms of the lease had been definitely agreed upon, and nothing was left open, and the only reason for the formal execution of a lease was that the parties to the lease intended to form a corporation which, of course, is a distinct thing from its stockholders, and they, of course, could not at that time have legally bound the corporation. However, after the corporation was formed, the same identical men became the officers, directors, and subscribers to all of the stock, there was nothing to forbid them binding the corporation by waiving the formal execution of the lease, which they did. When a corporation accepts the benefits of unauthorized acts of its promoters, knowing what

those acts are, it ratifies their acts, and are bound thereby. It cannot accept the benefit of an unauthorized act and then repudiate the liability thereunder, unless it has no knowledge of the liabilities at the time.

The district judge says in his opinion that the correct rule is stated in 14 Corpus Juris, p. 255: "Since the promoters of a corporation are not in any legal sense its agents before it comes into existence, it is a well-settled rule that a contract made by them, even though it be made for and in the name of the proposed corporation, is not binding on the corporation when formed, unless it is made so by the charter or statute, or unless it is expressly or impliedly adopted by the corporation after it has come into existence," and says this contract was not made that of the corporation, nor was it ever expressly ratified by the corporation.

Neither attorney for intervener or defendant has made reference to the resolution of March 19, 1925, by the board of directors of the defendant corporation, whereby the corporation in the express terms of a resolution purchased from the promoters the contract involved, and not only made it the property of the corporation, but described it as a five-year lease. Therefore it is possible in this voluminous record that the district judge overlooked this resolution. The contract was expressly adopted, and the rule laid down in 14 Corpus Juris, p. 225, has been fully met.

Defendant invokes Act 128 of 1894 to defeat the claim of intervener. The act reads as follows, in part:

"Be it enacted by the General Assembly of the State of Louisiana, That the lessor's privilege and right of pledge under any lease, on any building used wholly or in part for mercantile purposes, executed or entered into after August 31st, 1894, etc. * * *"

Under this act, the privilege of the lessor is for only twelve months after date of insolvency. Act 190 of 1926 makes lessor's privilege only for six months; however, the contract in question was entered into in 1925, and will be governed, if at all, by Act 128 of 1894.

In the case of Ballard, ex officio Tax Collector, vs. Kentwood Ice Mfg. & Bottling Works, 147 La. 583, 85 So. 598, the facts are very similar to the present case. The bottling company did not operate a retail business in connection with the manufacture of soft drinks, but only sold its products in wholesale quantities, and therefore was not engaged in mercantile business. It is a manufacturer, and does not come under Act 128 of 1894. Ballard vs. Hammond, 147 La. 582, 85 So. 597; In re Brown, 140 La. 928, 74 So. 253; State vs. Tichenor, 118 La. 685, 43 So. 277; State vs. Sugar Company, 108 La. 603, 32 So. 965.

The intervener is entitled to rent at the rate of $90 per month from October 15, 1928, until March 15, 1930, less a credit of $25 received by intervener from other persons, less 8 per cent. per annum on each monthly payment, being the highest rate of conventional interest allowed in this state. Patterson vs. Port Barre Lumber Company, 136 La. 60, 66 So. 418.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and that there be judgment in favor of intervener, B. A. Bass, and against N. M. Vogelsang, receiver of Shreveport Nu-Grape Bottling Company, Inc., in the full sum of $90 per month for the period of seventeen months, beginning

with October 15, 1928, up to March 15, 1930, less a credit of $25, and less 8 per cent. per annum on each monthly payment, all computed to be from judicial demand, and 5 per cent. per annum interest on said amount until paid; recognizing intervener's lessors privilege and lien on the funds in the hands of the receiver, derived from the sale of the property of the Shreveport Nu-Grape Bottling Company, Inc., that was located in and on the premises of intervener, described as lots 1262 and 1263, between Seventieth and Seventy-first streets, in Cedar Grove, La.; defendant and appellee to pay costs of both courts.