LOTTINGER, Judge.
This is an action brought by the Liquified Petroleum Gas Commission and the State of Louisiana through its Attorney General against the Hiwan Petroleum Company, a foreign corporation doing business within this state, wherein it is alleged that the defendant is a dealer in liquefied petroleum gases and, as such, under the jurisdiction of plaintiff commission and required to post bond and come under its regulations. The prayer is for an injunction restraining the defendant from operating as a liquefied petroleum gas dealer within the state until such time as it complied with the rules and regulations of plaintiff by securing a permit, filing bond and providing insurance as required.
The defendant first filed exceptions to jurisdiction rationae materia and of no cause or right of action. After these had been overruled it answered, alleging that it was a manufacturer within the provisions of Article 6, § 28, of the 'Constitution of the State of Louisiana, and hence was excluded from the jurisdiction of the plaintiff commission. The plaintiff waived a preliminary injunction and trial was had on the merits for a permanent injunction. The lower court found that the defendant was a manufacturer as contemplated by the above cited section of our Constitution and dismissed the suit. The matter is now before us on an appeal taken by the plaintiffs.
The pertinent Constitutional provision referred to above provides that:
“ * * * such power of regulation shall not extend to the manufacture of liquefied petroleum gases, or the manufacture of products of which liquefied petroleum gases form a component part, nor to installations or storage or delivery of such gases within the plant site of any such manufacturer. The provisions of this act shall not apply to manufacturers of liquefied petroleum gases, as herein defined, who manufacture or purchase liquefied petroleum gases for use or consumption in their operations, or who sell all or part of the liquefied petroleum gases so manufactured or purchased exclusively to resellers.”
According to Dr. Charles F. Sanderson, holder of a doctorate in chemical engineering who testified for defendant, the latter’s plant located at Cotton Valley, Louisiana, is a “complete plant” or “integrated unit” with “Twenty-four hour supervision”. Located at the plant site and used in connection therewith are “blending tanks”, “mixing facility”, “blending facility”, “facilities for odorization of the blended product”, etc. In addition, “the sulphur content test”, “the freeze test”, and a “chemical and physical *329 examination of the product” are made at the plant:
Among the products produced by the defendant there is included a “Butane-propane mixture”. Dr. Jesse Coates, who testified on behalf of the defendant, reported in part as follows:
“In the particular case in question, the extraction of propane and butane from natural gas does not seem to be involved. This plant, according to my information, is engaged in manufacturing mixtures of propane and butane hydrocarbons in order to produce products of definite composition and properties. The products are sold to other firms for distribution to the public or other use, as they see fit.
“The manufacturing operations and procedures involved in such a plant would include metering or measurement, mixing, blending, pumping, dehydration (water removal), chemical and physical examination of the product, corrosion inhibition and chemical treatment by the addition of antioxidants and other agents where necessary, storage, loading and unloading, safety procedures and fire prevention. Each of these is a procedure or operation which is generally recognized as a component part of a manufacturing process. In fact, one definition of a manufacturing plant is that it involves an ‘integrated series of “Unit Operations” ’ such as those mentioned above. It could hardly be said that no manufacturing art was required to produce the desired product.”
And this report concluded with:
“The legal definition of a manufacturer which is repeatedly cited is, ‘A manufacturer — is one who gives new shapes, new qualities, new combinations, to matter which has already gone through some artificial process. Nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from * * * the employment of machinery * * * are now commonly designated as “manufactured.” ’
“The scientific mixing and blending of propane and butane hydrocarbons to produce specification products qualifies as manufacturing under the above definition and such specification products are manufactured goods. Certainly ‘new qualities’ and ‘new combinations’ are imparted and the material has , acquired ‘new and specific combinations,’ and the original component parts have lost their separate identities as such and could not be restored to this original state except by distillation or other separation process.
“These operations also should be defined as manufacturing even under the somewhat more restricted and engineering definition, as set forth in the preceding pages. A process consisting only of scientific blending and mixing to obtain a specification product would qualify as manufacture since these are generally recognized manufacturing processes.”
The accepted definition of the term “manufacturer” is one “which engages in the business of working raw materials into wares suitable for use or which gives new shapes, new qualities or new combinations to matter which has already gone through some artificial process.” See Art. 10, § 4 (10) of our Constitution; City of New Orleans v. LeBlanc, 34 La.Ann. 596.
In the case of State v. American Sugar Refinery Co., 108 La. 603, 32 So. 965 it was held that the refining of sugar from raw sugars is manufacturing. Also in the case of State v. G. H. Tichenor Antiseptic Company, 118 La. 685, 43 So. 277, it was held that the combination of elements going to make up the antiseptic is manufacturing. In Ballard v. Hammond Coco Cola Bottling Company, 147 La. 580, 85 So. 597 the bottling of soft drinks was held to be manufacturing. Similarly in State v. Magnolia Packing Company, 213 La. 661, 35 So.2d 442, the Court held that the processing of *330 meat into lard and sausage was manufacturing.
Considering the evidence in the light of the above cited authorities it appears clear that the activities of the defendant constitute manufacturing within the meaning and intendment of Art. 6, § 28 of our Constitution. The judgment appealed from is therefore affirmed.
Judgment affirmed.