No. 11,334.

CITY OF NEW ORLEANS VS. NEW ORLEANS COFFEE COMPANY, LIMITED.

Exemptions from taxation are strictly construed. A corporation claiming to own a secret non-patented process by which, without the use of any chemical, it is

enabled to make selections of green coffees which, through careful and cleanly roasting and a secret process of cooling, produce "brands" of unground roasted coffees, each one of which is claimed to have a recognizable taste—is not a " manufacturer" within the meaning of Art. 206 of the Constitution, and is not exempt under that article from the payment of a license.

APPEAL from the First City Court of New Orleans.
Childress, J.

Geo. W. Flynn, Assistant City Attorney, and E. A. O'Sullivan, City Attorney, for Plaintiff and Appellant.

Moise & Cahn for Defendant and Appellee.

The opinion of the court was delivered by

PARLANGE, J.    The defendant corporation claims to be " a manufacturer of coffee," and to be as such exempt under Article 206 of the Constitutin from the payment of a license.

The defendant corporation contends that by means of a secret non-patented process, it is enabled to make a selection of green coffees having the qualities required for the purpose intended, which coffees, after being subjected to manipulation, being roasted and being allowed to cool in a particular manner, produce certain brands of coffee, each having a recognizable taste and flavor.

The defendant corporation says and insists that no chemicals of any kind are used during the secret process, and it is upon the production of its different brands of roasted coffee that it relies to be held to be " a manufacturer of coffee."

We have considered the evidence and the pleadings with care, and we are satisfied that the defendant corporation does not claim that it is a manufacturer by reason of grinding coffee and thereby changing its form, and while some incidental statements to be found in the testimony might indicate that exceptionally the defendant corporation may grind the coffee which it manipulates, its claim to be a manufacturer of coffee is based wholly on the production of brands of unground roasted coffee.

These brands, as stated, are claimed to be the result as well as the object of the secret process above referred to, which process the defendant claims is valuable, $1000 having been offered for it.

Whatever this secret process may be, we are to decide whether the defendant corporation is a manufacturer, on the tangible results of the manipulation to which they subject green coffees, bearing in mind the assertion of the defendant corporation that it uses no chemicals, and that the coffee after the manipulation is still pure coffee.

The defendant corporation virtually admits that a "coffee roaster" is not a manufacturer, but denies that such a designation can properly be applied to it. A "coffee roaster" is testified by the witness for the defendant corporation to be a person "who takes a sack of coffee and simply puts it in a roaster and turns that coffee out after it is roasted."

Exemptions from taxation are strictly construed, the general rule being that every citizen must bear his share of the expenses of government. Is the defendant corporation a manufacturer? Admitting that it has a secret process for the selection of green coffees, the result of which is the production of "brands of coffee" suitable to different tastes and recognizable from each other, and admitting further its claims of careful and cleanly roasting and its other secret process of cooling the roasted coffee, is the result a manufactured article? We think not.

It is not every employment of labor which will make the thing upon which it is employed a manufacture. It has been held that the great and laborious pursuits of mining and ship building are not manufacturing occupations. In another order, this court has held that a maker of ice cream, even on a considerable scale, is not a manufacturer (New Orleans vs. Mannessier, 32 An. 1075). In that case this court said that the mammoth kitchen of a hotel is not a manufactory. Yet, the confectionery and the kitchen yield products in which the identity of the articles from which they are made is almost lost.

In the case of Hartranft vs. Wiegmann, 121 U. S. 609, the Supreme Court of the United States held that where the outer layer of shells was cleaned off by acid and the second layer was then ground off by an emery wheel, so as to expose the brilliant inner layer, the result was not a manufactured article.

We quote further from Hartranft vs. Wiegmann, as follows:

"We are of opinion that the shells in question here were not manufactured and were not manufactures of shells.    *    *    *

They were still shells.  They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell.  The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws.  Washing and scouring wool does not make the result a manufacture of wool.  Cleaning and ginning cotton does not make the result a manufacture of cotton.  In Schedule M of Sec. 2504, R. S., a duty of 30 per cent. *ad valorem* is imposed on ' coral, cut or manufactured;' and in Sec. 2505, ' coral, marine, unmanufactured,' is made exempt from duty.  These provisions clearly imply that but for the special provision imposing the duty on cut coral it would not be regarded as a manufactured article, although labor was employed in cutting it.  In Frazee vs. Moffitt, 20 Blatchford, 267, it was held that hay pressed in bales, ready for market, was not a manufactured article, though labor had been bestowed in cutting and drying the grass and baling the hay.  In Lawrence vs. Allen, 7 How. 785, it was held that India-rubber shoes, made in Brazil, by simply allowing the sap of the India-rubber tree to harden upon a mould, were a manufactured article, because it was capable of use in that shape as a shoe, and had been put into a new form, capable of use and designed to be used in such new form.  In United States vs. Potts, 5 Cranch, 284, round copper plates, turned up and raised at the edges from four to five inches by the application of labor, to fit them for subsequent use in the manufacture of copper vessels, but which were still bought by the pound as copper for use in making copper vessels, were held not to be manufactured copper.  In the case of United States vs. Wilson, 1 Hunt's Merchants' Magazine, Judge Betts held that marble which had been cut into blocks for the convenience of transportation was not manufactured marble, but was free from duty, as being unmanufactured."

The evidence in the instant case and the spirit of the decisions cited satisfy us that the defendant corporation is not a manufacturer of coffee, as claimed by it, so as to entitle it to exemption from license under Art. 206 of the Constitution.

The Ernst case, 35 An. 746, relied on by the defendant corporation, is not applicable.  To clean rice, a long and laborious process is required; a large and expensive plant, including powerful and complicated machinery, is necessary; and from the " paddy," several marketable by-products are obtained, besides the cleaned rice.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby reversed, annulled and set aside, and that said defendant corporation pay to the plaintiff the sum of fifty dollars as a license due said plaintiff by said defendant for carrying on the business of wholesale dealers for the year 1893; and that said defendant further pay said plaintiff 2 per cent. per month interest on said amount from March 1, 1893, and all costs.