## No. 13,163.

STATE EX REL A. A. BROWNE, SHERIFF AND TAX COLLECTOR, IBERVILLE PARISH, VS. THE A. W. WILBERT'S SONS LUMBER AND SHINGLE CO.

| 51 | 1223 |
|-----|------|
| 108 | 627 |
| 108 | 645 |
| 108 | 646 |

### SYLLABUS.

The provisions of Article 229 of the Constitution of 1898, are almost identical with those of Article 206 of the Constitution of 1879; and the clause thereof which provides that all persons, associations of persons and corpor-

State ex rel. Sheriff and Tax Collector vs. Wilbert's Sons Lumber & Shingle Co.

ations pursuing any trade, profession, business or calling, may be rendered liable to a license tax, except clerks, laborers, etc., and those engaged in mechanical pursuits, and manufacturers other than those of distilled alcoholic or malt liquors, etc., includes all manufacturers of every kind and character, and those engaged in mechanical pursuits, other than those enumerated in the exception.

The proprietor of an establishment employed in the conversion of saw-logs into lumber of different kinds and qualities in its rough state, is engaged in changing by machinery raw materials into new and useful forms, and is, therefore, a manufacturer not within the exception.

A corporation which, by the application of labor and mechanical skill, makes salable articles out of the raw material, and by this means converts them into new and different articles having a distinctive name, character or use from that of the raw material, is a manufacturer in the sense of the constitution.

Section 11 of Act 171 of the license law of 1898, which provides that saw-mills shall pay a license, based on their gross annual receipts, is unconstitutional *pro tanto*, and the license sought to be collected is illegal, and can not be enforced.

ON APPEAL from the Fourteenth Judicial District Court for the Parish of Iberville, *Talbot, J.* .

*J. H. Rills* for Plaintiff and Appellee.

*Lozano & Hebert,* for Defendants, Appellants.

Argued and submitted May 2, 1899.
Opinion handed down May 29, 1899.

The opinion of the court was delivered by

WATKINS, J. This is a proceeding by the sheriff and ex-officio tax collector of the parish of Iberville by rule under the statute, against the defendant corporation to compel it to show cause why it should not pay a license under Section 11, Act 171 of 1898—based on an aggregate amount of gross sales less than five hundred thousand dollars, and amounting to the sum of $625.00.

The allegation of the relator is, that the defendant company is carrying on, in the town of Plaquemine, in the parish of Iberville. the business of operating and running saw-mills and that, therefore, the license claimed is due.

The respondent for answer admits that it is engaged in said business, but specially denies any indebtedness to the State whatsoever for license; but, on the contrary insists, that its business is that of a

State ex rel. Sheriff and Tax Collector vs. Wilbert's Sons Lumber & Shingle Co.

manufacturer and it is specially exempt from the payment of a license by the terms of Article 229, of the Constitution of 1898.

Respondent further avers, "that with the same steam-power, and in connection with its said saw mill business, it operates a large quantity of machinery which is used solely in the manufacture of manufactured articles of wood. And, in the event it should be held by the court that the business of operating a saw-mill proper is not that of a manufacturer under the terms of Article 229 of the Constitution of this State, then, the license aforesaid should be graded and based only upon respondent's actual gross sales derived from that portion of its business of operating a saw-mill proper; and all that portion of respondent's business shown to be a manufactory, be declared exempt from the payment of said license."

The purport of the respondent's return is that it is a manufacturer and exempt, by the Constitution, from the payment of the aforesaid license; but, that, in the event it be held that its business is not that of a manufacturer, then, and in that event, the amount of license should be graded and based upon the actual gross sales of its saw-mill business.

The evidence consists, exclusively, of the following brief statement made by the president of the defendant company, to-wit:

"I am the president of the defendant corporation, and it is engaged in the business of operating saw-mills. In connection with the saw-mill business of said corporation, a large quantity of machinery is used and operated by the same steam power in the manufacture of manufactured article of wood, such as shingles, flooring, ceiling, siding, weather-boarding, plastering, laths, fence-pickets, railroad cross-ties, and all kinds of moulding.

"The saw-mill business of said corporation is operated by skiddling and floating cypress trees from the swamps and converting them into lumber ready for the builders use. There are more than 350 men employed."

And of the further statement made by the secretary-treasurer, and general manager, to-wit:

"Said corporation is engaged in the business of operating saw-mills. In connection with the saw-mill business of said corporation, a large quantity of machinery is used and operated by the same steam power, in the manufacture of manufactured articles of wood"—giving the same enumeration as that given by the president.

State ex rel. Sheriff and Tax Collector vs. Wilbert's Sons Lumber & Shingle Co.

There is no other testimony in the record.

For the written reasons contained in the record, and to which reference will be hereafter made, there was judgment rendered to the effect that the defendant corporation "is liable for a license based " upon the actual gross sales of the product of its said saw-mill busi- " ness only, not including or embracing any of the gross sales of the " manufactured articles of wood herein enumerated and which are " ready for use, without other or further manipulation.

"The said gross sales for the purpose of fixing a basis for the amount " of said license are to be ascertained by the affidavit of said defend- " ant, filed with the tax collector, under the provisions of existing " laws."

The judgment further provided, "that the defendant be and it is " hereby ordered to cease from the further pursuit of its said saw- " mill business until it has paid the amount of license based as " herein directed, with all legal penalties, attorney's fees and costs of " these proceedings."

It appears from the foregoing, that the judge a quo was of the opinion, "that a saw-mill operated only as a saw-mill, and manufact- " uring lumber only, is not a manufactory."

Further, "that all of that portion of defendant's machinery em- " ployed in the manufacture of manufactured articles of wood, such " as shingles, flooring, siding, palings dressed and headed, plastering " laths, fence laths, mouldings, casing, mouldings, dressed and fin- " ished, bridge material, fence posts, and railroad cross-ties, ·and all " other articles which, like these, are ready for use without other or " further manipulation, is a manufactory, and exempt from the pay- " ment of a license under the provisions of Article 229 of the Consti- " tution, etc."

As we understand the answer, and as it is distinctly stated therein, respondent's claim is, that its business "is that of a manufacturer, " and it is specially exempt from the payment of a license by the terms " of Article 229 of the Constitution; and the claim made by the " relator is that the respondent is liable for a license tax only."

No claim is made for the payment of a property tax. The two are entirely different, and easily distinguishable.

In our view, the judgment pronounced has confused the two ideas, and misplaced the defence of the company altogether.

For instance, the judgment says: (1) "The court is of the opinion

." that a saw-mill, operated only as a saw-mill, and manufacturing " lumber only, is not a *manufactory*"; (2) the "court is, also, of the " opinion that all of that portion of defendant's machinery employed " in the manufacture of manufactured articles of wood, such as " shingles, flooring, etc.,   *   *   *   which, like those, are ready for " use without other or further manipulation, is a *manufactory*, and " exempt, etc."

In the written reasons of the court for rendering judgment, it is stated that the defendant contends in its answer that it is exempt from the payment of a license under Article 229 of the Constitution as a manufacturer.

We make the following quotation from said reasons, as follows, to-wit:

"Article 229, of the Constitution, under which this exemption is " claimed, is a reproduction of Article 206 of the Constitution of 1879, " and exempts all manufacturers from the payment of a license.

"This power of imposing a license upon said mills was exercised by " the legislature under the Constitution of 1879.   Under the revenue " laws of 1890, these mills were exempted, and this exemption gave " rise to the case of Sheriff and Tax Collector vs. Gall & Pharr, " reported in 43rd Ann., page 961.

"The Legislature, under the present Constitution, has seen proper " to renew this license.   The action of the Legislature, under these " Constitutions, upon a similar and identical provision, furnishes an " interpretation as to the liability of saw-mills being licensed, and, " also, as to their not being manufacturers in the sense of that term. " And this interpretation will not be lightly disturbed upon the " familiar principle that the Legislature is presumed to have acted " within the limits of its power, and this interpretation will be adopted " by the court unless the exceeded power is placed beyond a reasonable " doubt.

"Unquestionably, some of the articles described and enumerated by " the defendants, and which are produced in their business, must be " regarded as manufactured, and to that extent confer upon them the " character of manufacturers.   The Supreme Court, in several cases, " in deciding, under Article 207 of the Constitution of 1879, which is " reproduced with a single change in the present Constitution, what " wood products were manufactured under the clause exempting " manufacturers of furniture and other articles of wood, has placed

"shingles, laths, fence posts, bridge material, etc., in the category of "manufactured articles.

"It is hardly to be presumed that the Legislature, composed of many "lawyers familiar with the decisions of the court upon the subject, "proposed to exact a license from the owner of a factory or mill pro- "ducing articles of this kind, but that it intended the license to apply "to the owners of saw-mills proper.      *    *    *    *    *    *

"The defendant (corporation) can not be classed as manufacturers "in reference to the lumber of their saw-mills.  It is true that the "term manufacturer has a very extensive signification, but in the "construction of a statute, or constitutional provision, the words in "either must be understood according to their ordinary and natural "meaning.

"In the case of the City of New Orleans vs. LeBlanc, 34th Ann., "page 597, the Chief Justice said, in defining this term, that 'a manu- "facturer is not one who creates out of nothing, for that surpasses "human power; neither is he one who produces a new article out of "materials entirely raw.  He is one who gives new shapes, new quali- "ties, new combinations, to matter which has already gone through "some artificial change.'

"It can not be said that the lumber of defendant's mill represents "the production of an article out of the raw material that has been "subjected to artificial force or process whereby something has been "added to change its natural condition, and render it at once useful "in itself.

"The logs, or trees, from which the lumber is made simply undergo "a change of form, and can not be made useful without further labor, "skill, or machinery."

It is upon this hypothesis that the opinion of the district judge rests; and his theory appears to be, that, inasmuch as lumber in its rough state is made by machinery from trees of natural growth, cut into logs in lengths suitable for that purpose, that same is not a manufacturing process, for the reason that that product is not a finished product, or an article of wood ready for use without other or further manipulation.

In our view, that argument would have more correct reference to the exemption contained in Article 230 of the Constitution of certain enumerated manufactured products, from the payment of a property tax.

The only appearance which the relator has made in this court is by answer to the appeal, in which it is said "that the judgment of the lower court is erroneous in this, that it exempts a portion of the products of defendant from the license required by law."

It, therefore, prays that the judgment appealed from be so amended as "to include all of the products of the defendant's saw-mill business, "and that as so amended, it be affirmed."

The theory upon which the appeal of the defendant company proceeds is, that under Article 229 of the Constitution *"all manufacturers* are exempt from *license* taxation:" whereas under Article 240 of the Constitution "only the *certain, designated* manufacturies therein mentioned are exempt from property taxation."

And his argument is that a saw-mill is a manufactory, and that the company is a manufacturer in the sense of Article 229 of the Constitution, and, therefore, the license act in so far as it levies a license tax on saw-mills, is unconstitutional and void.

The contention is not only that the company is engaged in the business of operating a saw-mill and cutting logs into lumber in its crude state, but that a large part of its machinery is operated by steam power and used in the manufacture of rough lumber into finished articles of wood, such as shingles, flooring, etc.

In other words, the company's business is commenced by skiddling and floating cypress trees out of the swamps, converting same into lumber ready for the builders' use; and, also, of converting rough lumber into finished articles of wood.

For the purpose of showing the appreciation defendant's counsel has of the view the district judge has taken of the matter, we make the following extract from his brief, page 3, to-wit:

"The lower court based its reasons and conclusions upon the decis- "ion of the Supreme Court on the question of exemption from prop- "erty taxation, under Article 207 of the Constitution of 1879.

"Its conclusions are, that the same interpretation should be placed "on the term 'manufacturer' under Article 229 of the Constitution of "1898, in reference to license, etc., as the Supreme Court has placed "on Article 207, Constitution of 1879, as to *property taxation* of "manufacturers of furniture and other articles of wood. And that, "therefore, shingles, flooring, siding, etc., * * * and all other "articles of wood, which, like these, are ready for use without further

"manipulation, is a manufactory, and exempt from the payment of "licenses under Article 229 of the Constitution.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"There is no doubt, that had the claim been for *property taxation,* "under Article 230 of the present Constitution, which is nearly a "reproduction of the old Article 207 of the Constitution of 1879, his "contention would be correct.

"The Supreme Court has repeatedly decided that 'the test of manu- "facture of furniture and other articles of wood,' etc., under Article "207 of the old Constitution, was the readiness for immediate use"— citing the cases.

"In all those cases, the articles were manufactured from raw mate- "rial, and were ready for immediate use without further manipula- "tion.

"But, we contend that Article 207 of the Constitution of 1879 only, "contemplated the exemption from taxation of *machinery,* etc., of the "certain class of manufactories therein mentioned, while Article 206 "of the constitution (now 229 of the new constitution), exempts from "license *all manufacturers,* except those of alcoholic and malt "liquors."

Having stated specifically the contention of the defendants and that of the district judge—relator's counsel having filed no briefs in this court—we will proceed to the discussion of the authorities bear- ing on the question, which seems to be, the liability *vel non* of the defendant as a manufacturer for State licenses under Article 229 of the Constitution.

Section 11 of Act 171—the license law—of 1898, amongst other things provides, "that for carrying on each business of gas-light, "electric-light, water-works,   \*    \*    \*    \*    \*    \* "*saw-mills* employing ten or more hands, etc.,   \*    \*    \*    \* "the license shall be based on the gross annual receipts, etc." It is on this statute that the relator relies for the collection of the license tax in question.

The provisions of Article 229 of the Constitution of 1898 are almost identical with those of Article 206 of the Constitution of 1879, and the clause of that article upon which the defendant relies is couched in the following terms:

"The General Assembly may levy a license tax, and in such case

State ex rel. Sheriff and Tax Collector vs. Wilbert's Sons Lumber & Shingle Co.

shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions, vocations and callings.

"All persons, associations of persons, and corporations pursuing any trade, profession, business or calling may be rendered liable to such tax, except clerks, laborers, clergymen, school-teachers, those engaged in mechanical, agricultural, horticultural and mining pursuits, and manufacturers, other than those of distilled alcoholic or malt liquors, tobacco, cigars and cotton-seed oil."

Therefore, the question propounded to us by the defendant is, whether its business as described, is a mechanical pursuit; and whether it is a manufacturer, not included in the exceptions mentioned therein.

It is noticeable upon the face of Article 229, that its provisions relate, exclusively, to "all persons, association of persons, and corporations," and that it has reference to the levy by the General Assembly of a license tax against all such persons as are not embraced within the exception thereto.

It is, also, noticeable upon the face of Article 230 of the constitution, that its provisions relate to exemptions from property taxation; and that among the exemptions are, to-wit, "all public property, places of religious worship, etc." And that it especially declares that there shall be exempt from taxation, "the capital, machinery, and other property employed in mining operations, and in the manufacture of textile fabrics * * * and furniture and other articles of wood, etc."

From the foregoing it is manifest that the provisions of Article 229 have reference to license taxation, and exemptions therefrom; and that Article 230 has relation to exemptions from property taxation, exclusively.

That in the former, reference is had to such persons as are engaged in mechanical pursuits, and such as are *manufacturers*, other than such as are excepted therefrom; and that in the latter, reference is had to exemptions from property taxation, and nothing else.

Under the former, all manufacturers *eo nomini*, and all persons engaged in mechanical pursuits are exempted from license taxation other than those excepted; and the provisions of the latter deal with property taxation, and not with personal licenses.

The language of Article 207 of the constitution of 1879, to-wit: "and shall also be exempt from taxation and *license*, etc.," has been so

altered by Article 230 of the Constitution of 1898, as to eleminate the word *license,* and the doubt hitherto existing in regard to the import of that word, as used therein, is thereby removed, and the provisions of the two articles rendered harmonious.

This court had occasion, recently, to examine the particular question now under discussion with regard to the provisions of Article 206 of the constitution of 1879, in State of Louisiana vs. American Sugar Refining Company, 51 Ann., 562; and, in the course of our decision we carefully reviewed and analyzed all the adjudications of this court upon the questions, and reached the conclusion that the defendant company in that case was not exempt from license taxation as a manufacturer. As that case is an important one, and has been removed to the Supreme Court of the United States upon a writ of error, we think it well to re-examine the decisions therein cited, and apply them to the questions of exemption in the instant case.

In City vs. LeBlanc, 34th Ann., 597, this court held that:

"A manufacturer is not one who creates out of nothing, for that " surpasses human power; neither is he one who produces a new ar- " ticle out of materials entirely raw. He is one who gives new shapes, " new qualities, new combinations to matter which has already gone " through some artificial process.

"A shoemaker is none the less a manufacturer, because he does not " also tan the leather; the tanner is none the less a manufacturer of " leather, because he does not breed and raise the bullocks from which " the raw hides are taken. The tanner makes leather to sell, but does " not buy hides to sell ———— produces the article of the leather and " depends for his profit upon the labor which he bestows upon the raw " material."

On that statement, the court sustained the defendant's exemption from the payment of a license, on the ground that his occupation was that of a cooper and that he made barrels and hogsheads from rough logs and splitts.

In City vs. Ernst & Co., 35th Ann., 746, the court sustained the defendant's exemption, as a rice-miller, and in so doing, employed this language, to-wit:

"A manufacturer is defined to be, one who is engaged in the business of working raw material into wares suitable for use, who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process.

"A manufacturer prepares the original substance for use in different forms.

"He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw material.

"Rice is an agricultural product extensively raised in this State. The milling of it is effected by different processes, during whch it passes from its original roughness to conditions in which it is fit for different uses.

"Deprived of its outer shell, and of the silica enveloping the denuded grain, it becomes an object of marketable value. It is only after several manipulations that various substances or products are obtained, which are the hull, the bran, the flour, the red grain and, finally, the cleaned and polished kernal, all of which become separate and distinct articles of commerce.

"It is not easy to distinguish between the several processes to which rice is subjected by the manufacturer, who, from beginning to end, works it up into various forms for use.

"It may be said to undergo one and the same process throughout. * * * The person who puts it through the process gives to it gradually new shapes, new qualities, new combinations, and thus is a manufacturer within the intent and scope, the spirit and letter of the constitutional immunity."

In State vs. Dupre, 46th Ann., 561, the court maintained the defendant's exemption from the payment of a license for pursuing the business of editing and printing a daily newspaper, and the court, after making the foregoing quotation from City vs. LeBlanc, used this language, to-wit:

"Keeping this definition in view, the statement of facts embodied in this record shows that defendant's use in their business, valuable machinery and implements; that, in addition to the clerical and editorial departments, they employ a large number of mechanical laborers, such as type-setters, engineers, pressmen and their assistants; that they purchase and use great quantities of raw materials, such as paper, ink, glue, etc.; that, by means of this machinery and mechanical labor, they convert this raw material into a new and distinct article, fit for use and in commercial demand, called a newspaper, which they sell directly to dealers and consumers."

In State vs. Manufacturing Company, 47th Ann., 160, this court

78

maintained the exemption of the defendant from license taxation as a manufacturer of crackers, biscuits and Italian paste—the proof disclosing that "the process of manufacture is, that the flour leaves the barrels and passes through a powder sifter, thence into a powder mixer, from this into a dough box on tracks, and is worked into two different kinds of dough; goes into a cutting machine, and, finally, into the oven, from which the complete articles are taken, boxed and shipped. The material is handled exclusively by machinery.

Upon this statement, the court say:

"It will readily be perceived that the establishment is a manufactory in which raw materials are made into wares suitable for use. There are new shapes, new combinations, new qualities given to the raw material by the process of manufacturing the article from the original material."

After citing other cases, and distinguishing them therefrom, the court concludes thus, to-wit:

"In the instant case the identity of the original material is lost in the new articles created in the change of shape, new qualities and new combinations, which enter into their composition, which render them suitable for use in an entirely different manner from the manner in which the original material could be used."

After citing a number of cases in which the exemption was disallowed, the court, in the case cited—State vs. American Sugar Refining Company—made the following statement, to-wit:

"Considering these various expressions of opinion with regard to the term 'manufacturer,' what is the proper conclusion to arrive at in respect to the defendant's employment?

"This court said, that a cooper who makes barrels and hogsheads from rough logs and splits of wood was a manufacturer, because he gave new shapes, new qualities, and new combinations to matter which had already gone through some artificial process.

"It held that a rice-miller is a manufacturer, because he works raw materials into wares suitable for use, and makes from the denuded grain, after several manipulations, various commercial products and substances, such as bran, flour, red grain, and the polished kernel.

"It held that a corporation which made crackers, biscuit, and Italian paste from flour to be a manufacturer, because the raw materials were made into wares suitable for use—new qualities being given to the raw materials by various manufacturing processes, whereby the iden-

tity of the raw material was lost; that. the process by which the moisture in offal and animal matter is vaporized, and the grease and oil separated therefrom, and the *residuum* converted into fertilizers, is a manufacturing process.

"But it has held that one who purchases wet, muddy and damaged cotton, and cleans and prepares same for sale, is not a manufacturer, because cleaning and ginning cotton do not make the result the manufacture of cotton; that one who makes ice-cream from sugar, ice, milk, and other ingredients, is not a manufacturer; that one who makes bread from flour, salt and other ingredients, is not a manufacturer; that the natural import of the term 'manufacture' is to produce an article by changing the raw material into some new and useful form, and that to produce an article is not a mere addition, or mode of use of an article already manufactured; that a corporation, which by a secret non-patented process, is enabled to make a selection of green coffee, possessing the requisite qualities for an intended purpose, after having been subjected to certain manipulations, is not a manufacturer; that one who by the application of labor and mechanical skill makes certain kinds of shells more polished and attractive in appearance, is not a manufacturer, because he did not manufacture them into new and different articles, having a distinctive name, character or use from that of shells, for they remained shells still; that the washing and scouring of wool, do not make the result a manufacture of wool; that mining and ship-building are not manufactruing occupations; that the printer of calicoes is not a manufacturer, because he does not make the goods, but only prints the colors upon them, and improves their salable value, unlike the painter, who with his brush spreads colors upon a canvass, and thereby creates a work of art, which produces a pleasing impression upon the mind, and captivates the fancy of the beholder."

The result of the evidence as applied to the authorities, and to the facts of this case, sceems to be, that the conversion of saw-logs into lumber of different kinds, is the changing, by machinery, of raw materials into new and useful forms, and is not a mere addition of materials.

That the defendant corporation, by the application of labor and mechanical skill, makes salable articles out of the raw material, and by this means manufactures them into new and different articles having a distinctive name, character, or use from that of the raw material.

We make the following quotation from the brief of defendant's counsel, to-wit:

"We contend that saw-mills are equally entitled to be termed and declared manufactories. We claim that a saw-mill proprietor is clearly a manufacturer under the foregoing definitions.

"He works raw materials, to-wit: trees and logs into wares suitable for use; he gives new shapes to matter which has already gone through some artificial process. He makes, by manipulation and machinery, lumber to sell, and stands between the original producer and the dealer, or first consumer, depending for his profit on the labor which he bestows on the raw material.

"He, also, comes clearly within the reason and motive of the constitutional exemption, which was to encourage enterprises that furnish employment to home labor, in the making of things which people use and require, and which, if not made here, would be bought abroad.

"Surely the employment of over 350 persons, and gross sales of nearly $500,000 per annum shows the magnitude of the defendant's manufactory.

"Now we say, that, while the Supreme Court has never decided pointedly that a saw-mill manufacturing lumber was a manufactory, yet, in several decisions they use the term manufacture in reference to them.

*       *       *       *       *       *       *       *       *

"To toke a saw-mill out of the category of manufacturers, would be contrary to the decision of every court, and even of the constitutional intendment; and we feel satisfied that this will not be done.

"Should, however, the court come to the conclusion that the saw-mill business proper, is not a manufactory, then the judgment of the lower court should be affirmed under ruling of the court, in 33 Ann., 367, etc."

In State vs. Weckerling, 39 Ann., 37, defendant as a manufacturer of beer, claimed exemption from the payment of a license under Article 206 of the constitution, and the court denied the exemption on the ground that the manufacture of beer came within the terms of the exception therein contained, but, in the course of their opinion it said:

"The Article 206 (of the Constitution) exempts from the payment of license    *    *    *    and we have heretofore held, that the

constitution clearly exempts from license tax *all manufacturers* not excepted."

In Washburn vs. City, 43rd Ann., 226, we said: "It will be observed that *all manufacturers* are in terms excepted, unless they are included within the express reservation of that article."

Reference has been made to the decision of this court in Jones vs. Raines, 35th Ann., 996, in which was involved an alleged exemption of a saw-mill from *property taxation* under Article 207 of the constitution, on the ground that "its capital, machinery and other property (were) employed in the manufacture of    *    *    *    and other articles of wood," but, in denying the exemption we said:

"Our conclusion is, therefore, that capital, machinery and other property employed in the construction, and in the operation of saw-mills, is not exempt from taxation under the provisions of Article 207 of the constitution."

And in Plaquemine Lumber & Improvement Co., Ltd., vs. Browne, Assessor, 45th Ann., 459, there were involved three mills and manufactories.

In that case exemption was also claimed under Article 207; and plaintiff sought to exempt from property taxation saw-mills, and planing mills, upon the theory that they turned out dressed flooring, wainscoting and other articles of wood ready for immediate use, within the contemplation of that article, and the exemption was sustained in part and denied in part.

But, in neither of those cases, nor in any other case to which we have been referred, or, with which we have any acquaintance, has any exemption of the proprietor of a saw-mill from *license taxation* been claimed and denied under Article 206 of the Constitution of 1879, on the ground that he was a manufacturer as in the instant case.

But, it is worthy of notice that in Lumber Company vs. Assessor, *supra,* saw-mills and planing mills were mentioned specifically *as* "*manufactories.*"

Our examination of the authorities has resulted in the conclusion that there is no case in our reports which is adverse to the exemption claimed by the defendant.

In Tide Water Oil Company vs. United States, 171 U. S., p. 210, the Supreme Court said on considering a similar question, viz.:

"The primary meaning of the word 'manufacture' is something made by hand, as distinguished from a natural growth; but, as ma-

"chinery has largely supplanted this primitive method, the word is
"now ordinarily used to denote an article upon the material on which
"labor has been expended to make the finished product.

"Ordinarily, the article so manufactured takes a different form, at
"least, subserves a different purpose from the original materials; and,
"usually it is given a different name.

"Raw materials may be and often are subjected to successive pro-
"cesses of 'manufacture,' each one of which is complete in itself, but
"several of which may be required to make the final product.

"Thus, *logs are first manufactured into boards, planks, joists, scant-
"lings, etc.*, and then by entirely different processes are fashioned
"into boxes, furniture, doors, window sashes, trimmings and the
"thousand and one articles *manufactured* wholly or in part of wood.

"The steel spring of a watch is made ultimately from iron ore, but
"by a large number of processes or transformations, each successive
"step in which is a distinct process of manufacture, and for which the
"article so manufactured receives a different name.

"The material of which each manufacture is formed, and to which
"reference is made in Section 3019, is not necessarily the original raw
"material—*in this case the tree or log*—but the produce of a prior
"manufacture; *the finished product of one manufacture thus becom-
ing the material of the next in rank.* (Our italics).

"This case, thus resolves itself into the question whether the ma-
"terials out of which these boxes were constructed were the boards
"which were manufactured in Canada, or the shooks which were im-
"ported into the United States.

*       *       *       *       *       *       *       *       *

"It may be said, generally, although not universally, that a complete
"manufacture is either the ultimate product of prior successive man-
"ufactures, such as a watch spring, or a pen-knife, or an intermediate
"product which may be used for different purposes, such for instance
"as *pig iron, iron bars, lumber or cloth* (our italics); while a partial
"manufacture is a mere stage in the development of the material
"towards an ultimate and predestined product, such for instance as
"the different parts of a watch which need only to be put together to
"make the finished article.

"If, for instance, the wheels, chain, springs, dial, hands and case of
"a watch were all imported from abroad, and merely put together in

"this country, we do not think it could be said that the watch was "'wholy manufactured within the United States.

"The same remark we think may be made with reference to the "shooks in this case, which were practically worthless except for being " put together for a box of a definite size."

From the foregoing quotation taken altogether, as well as the portions which are italicised as specially important, we think it is clear, that the use and employment of machinery in cutting saw-logs into lumber in its rough state, of various kinds, qualities, dimensions and descriptions, is a manufacturing process, and that the proprietor of saw-mills thus engaged is, in the sense of the jurisprudence of this State and of the United States, a manufacturer; and that as such, the defendant company is entitled to the exemption claimed, from the payment of a license tax, under Article 229 of the Constitution of 1898.

Consequently, Section 11 of Act 171 of the license law of 1898, which provides that saw-mills shall pay a State license, based on the gross annual receipts, is unconstitutional, and the license sought to be collected is illegal, an can not be enforced *quoad hoc*.

It is therefore ordered and decreed, that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the demands of the relator be rejected, and that the exemption claimed by the respondents be sustained and enforced at the cost of relator in both courts.

BLANCHARD, J., dissents.