Statement of the Case.
MONROE, C. J.
The state tax collector ruled defendant to show cause why he should not be condemned to pay state licenses for the years 1914 and 1915, as required by Act 171 of 1S98, § 6, with costs, penalties, and attorneys’ fees, for having conducted the business of wholesale ice cream dealer.
Defendant made a return to the effect that he was, and is, a manufacturer, exempted from such taxation by article 229 of the Constitution. The rule was made -absolute by the district court, its judgment was affirmed by the Court of Appeal, and the matter has been brought here by writ of review.
It appears from the evidence and admissions in the record that defendant has been engaged in his present business for 11 years; , that the cost price of the real. estate and buildings upon and in which his business is conducted was $18,500, in addition to 'which he requires the use of a garage and stable; that the cost value of his machinery and appliances was $24,000; that, during each of the-years 1914 and 1915, the approximate cost of the material used by him was $S9,387.66; that he carried on his pay roll 20 employés, at an annual expense of $3,250.84; that his bill for fuel amounted to $3,56S.34, his gross sales to $119,326.86, his sales outside of New Orleans, but in this state, to $30,750; and that he has sold his product to the value of $5,000 per annum in Mississippi, Alabama, and Florida, employing two traveling salesmen in that business. Referring to the machinery and methods used by him, defendant testifies as follows (and there is no other testimony on the subject), to wit:
“This consists mainly of two refrigerating ice cream making machines, one of them of 10 tons capacity and one of them of 20 tons capacity. These are equipped with 15 and 40 horse power motors, and with all the requisites, such as brine coolers, cold storage, etc. In addition, there are three mixing machines, which are power driven by large separate motors. These machines blend the cream, sugar, and extracts together. We operate four ice cream freezers of the circulating brine type, costing $750 each. These freezers are German silver lined and have a daily capacity of 1,800 gallons of frozen product. These, of course, have to be equipped with individual 3 horse power motors. Three electrically equipped pumps are used for the circulation of the zero brine about the freezers. Ice crushers of which we have two and which will crush 25 tons of ice per hour, are used and operated also with motors of the proper size. Steam is necessary. We use a ten horse power boiler, and cans are washed by machinery. The large ice cream manufacturing plant of to-day could not be possible without a very large investment of capital *931 in both buildings, machinery, and other equipment; in fact, none of our product to speak of is handled by hand, but, almost exclusively, by this automatic machinery. The first step in the process of ice cream manufacture according to the method which we employ, is the pasteurization of the raw cream. This is handled in a large tank of 300 gallons capacity; the product being heated to 160 degrees, Fahrenheit, and held there for 30 minutes. It is then cooled to approximately 32 degrees by being run over specially made apparatus. It is then conducted to the mixing machine of 200 gallons capacity; the sugar and extracts are added during this process, which is being ‘agitated’ (consists of agitations), so as to blend the component parts together. The ‘mix,’ or raw material, as it is called, is then ready to be frozen, when it is run through a short line of sanitary pipe to the brine freezers below. If strawberry ice cream is desired or any other particular flavor, this fruit is added as the raw material flows to the freezer. In from 10 to 12 minutes, each of these machines, turns out about 13 gallons of ice cream. It is then drawn from the freezers into cans of different dimensions for shipment. These cans are transferred to what are called hardening rooms. These rooms are kept at a zero temperature, and as a result, in 24 hours, this cream is sufficiently hard to be ready for shipment. In case we wish to mold ice cream in brick form, this is done by running the same hard cream right from the freezers into the brick slabs or molds. It is then cut and wrapped into the desired sizes.”
Opinion.
[1] Article 229 of the Constitution declares that:
“The General Assembly may levy a license tax. * * * All persons * * * pursuing any trade, profession, business or calling may be rendered liable to such tax, except clerks, laborers, clergymen, school teachers, those engaged in mechanical, agricultural and horticultural pursuits, and manufacturers other than those of distilled alcoholic or malt liquors, tobacco, cigars and cotton seed oil.”
It will be observed that the article thus quoted exempts, from the tax here in question, all persons engaged in mechanical pursuits and all manufacturers, save those who are expressly excepted.
[2] The terms “manufacturer” and “manufacture” (the latter when used as a noun and verb, respectively) are defined as follows:
“Manufacturer. * * * One who manufactures; who is engaged in the business of manufacturing. In writings of the early eighteenth century, the term manufacturer was applied almost exclusively to the workmen; the employer was the master- manufacturer. In modern usage, by ‘manufacturer’ is almost always meant the employer. * * *
“Manufacture. * * * (1) The operation of making goods or wares of any kind; the production of articles for use from raw or prepared materials by giving those materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery; used more especially of production in a large way by machinery or by many hands working co-operatively. * * *
“Manufacture. * * * (I) To make or fabricate, as anything for use, especially in considerable quantities or numbers, or by the aid of many hands or machinery; work materials into the form of; as to manufacture cloth, pottery, or hai'dware; to manufacture clothing.” Century Dictionary.
See, also, Web. New Int. Dic., to about the same effect.
The definitions as above quoted were practically adopted by this court in the case of City of New Orleans v. Ernst & Co., 35 La. Ann. 747, where it was said:
“A manufacturer is defined to be: One who is engaged in the business of working raw materials into wares suitable for use, [or] who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A manufacturer prepares the original substance for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw material. (Citing) City of New Orleans v. Le Blanc, 34 La. Ann. 597.”
And further the court said in that case:
“The Constitution clearly exempts all manufacturers not excepted. The excepted ones are: Those who manufacture alcoholic or malt liquors, tobacco and cigars, and cotton seed oil. As the defendants do not come within the exclusion [being rice millers], it is manifest that the license claimed cannot be recovered.”
In State v. American Sugar Refining Co., 108 La. 603, 32 South. 965, we had occasion to reconsider a ruling made in a case between the same litigants, reported in 51 La. Ann. 562, 25 South. 447 (in which it was held that defendant, as a sugar refiner, was not a manufacturer within the meaning of the *933 constitutional provision here in question), and to hold that the refining of sugar, as there described, was a manufacturing business.
Among the citations of authority upon which that conclusion was based was the following:
“Nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, * * * are now commonly designated as manufactured.” Carlin v. Western Assur. Co., 57 Md. 515, 40 Am. Rep. 440.
In State v. Amer. Biscuit Mfg. Co., 47 La. Ann. 160, 16 South. 750, it was held that a corporation engaged in the manufacture, from flour, of crackers and Italian paste, was entitled to the exemption here claimed. The court said:
“The process of manufacture is that the flour leaves the barrels and passes through a powder sifter; thence into a powder mixer; from this into a dough box, on tracks, and is worked into the different kinds of dough; goes into a cutting machine; and finally into the oven, from which the complete articles (referring to the crackers) are taken, boxed, and shipped. The material is handled exclusively by machinery. From this statement it will readily be perceived that the establishment is a manufactory in which raw materials are made into ware suitable for use. There are new shapes, new combinations, new qualities given to the raw material by the process of manufacturing the article from the original material.”
In so holding the court cited the case of State v. Lupré & Hearsay, 42 La. Ann. 561, 7 South. 727, in which it was held that the publishers of a newspaper were manufacturers, entitled to the exemption from license taxation as provided by the Constitution, although it was conceded that such application of the term was novel.
Thus, it said:
“This raises the.novel questions whether or not a newspaper is an article of manufacture, and whether those who pursue the business of making or publishing newspapers are manufacturers within the meaning of the Constitution.”
The court then quotes the definition of “manufacturer,” as given in City of New Orleans v. Ernst & Co., supra, and the opinion proceeds:
“Keeping this definition in view, the statement of facts embodied in this record shows that defendants use in their business valuable machinery and implements-; that, in addition to the clerical and editorial departments, they employ a large number of mechanical laborers, such as typesetters, engineers, pressmen, and their assistants ; that they purchase and use great quantities of raw materials, such as paper, ink, glue, etc.; that, by means of this machinery and mechanical labor, they convert this raw material into a new and distinct article, fit for use and in commercial demand, called a newspaper, which they sell directly to dealers and consumers.
“Certainly, from a mechanical point of view, this presents all the essentials of manufacture under every definition of the word. It * * - * comes clearly within the reason and motive of the constitutional exemption, which was to encourage enterprises that furnished employment to home labor in the making of things which the .people use and require, and which, if not made here, would be bought abroad.
“But because the value of the newspaper is not derived from the raw material, or from the mechanical labor expended upon it, but rather as a mere medium for conveying the ideas and information impressed upon it by the purely intellectual labor of its editors, reporters, correspondents, and advertisers, the judge a quo concluded that the newspaper is a product of mind labor rather than of hand labor, and therefore is not an article of manufacture. The suggestion is plausible but, we think, not sound.”
In State ex rel., etc., v. Wilbert, 51 La. Ann. 1223, 26 South. 106, it was held, that:
“The proprietor of an establishment employed in the conversion of saw logs into lumber of different kinds and qualities in its rough state, is engaged in changing, by machinery raw materials into new and useful forms, and is, therefore, a manufacturer not within the exception.”
Plaintiff relies upon the decision in City of New Orleans v. Mannessier, 32- La. Ann. 1075, in which defendant claimed exemption from the payment of a license tax upon the business of peddling ice cream (manufactured by himself) on the streets of New Orleans, and the exemption was denied. It appears to us, however, that the case thus cited may be distinguished from, and that its decision should not control, the case now under consideration, for this, to Wit:
*935 Though the opinion in the cited case contains the statement that defendant had appealed from á judgment condemning him to pay a license “on his business” of peddling ice cream on the streets, it contains also the statement, that:
“The attempt to magnify a confectionary, which is defendant’s business, into a manufacture, must fail.”
From which it is fairly inferable that the court found that the business of the defendant was that of a confectioner, and that the peddling of ice cream was merely an incident thereto.
Again, though the court said, in that particular case:
“We cannot assent to the proposition that a person making and selling ice cream is a manufacturer in the sense of the law, or in any other sense of the word”
—it does not follow that, 36 years later, the same court may not say, in another case, that a person making and selling ice cream is a manufacturer, within the meaning of a Constitution that has since been adopted and of the recognized definitions of that word.
It will hardly do to say, because pork, beef, soups, vegetables, and fruits may be prepared, in any of the forms in which they are used, in the kitchens of private houses, restaurants, and hotels, that there can be no such things as packing and canning establishments, or that Menier and Huyler any the less manufacture chocolate into various forms and combinations because the same thing may be done as an incident to the business of an ordinary confectioner. A few children may make as good candy as the world' can produce, in a single tin cup, but, if they grow up, engage in the making of candy as a business, place their product on the market, and, perhaps, ship it to all parts of the world, no one will deny that they become manufacturers in every known and accepted sense in which that word is used. And, so, it may be that in 1880 Mannessier made ice cream under conditions which, in the opinion of this court, prevented his work from being entitled to recognition as that of a manufacturer, and fixed the status of his business as that of a confectioner. But that finding by the court has no more bearing upon the case here presented than it would have upon the case of a new generation of Mannessiers, shown at this time to be leading the world in the making and sale of candy and chocolate in their various forms and combinations; for the defendant now before the court has shown, without attempt at contradiction, that, by the use of a plant, consisting of real estate and machinery, costing over $40,000, and the regular employment of 20 operatives, he subjects cream to a process of pasteurization, combines and blends it ^with sugar and fruits or flavoring extracts, confers a new quality and new properties on the combination by processes of freezing, molds it into different forms and colors, and sells the annual product, in four states, for over $119,000, thereby, as we think, as surely distinguishing himself from the ordinary confectioner as a Chicago packing house distinguishes itself from the ordinary butcher and cook, and as surely acquiring the status of a manufacturer as any one else who produces “articles for use from raw or prepared materials by giving to those materials new forms, qualities, properties, or combinations.”
We note, in conclusion, that article 229 of the Constitution extends the exemption from license taxation to all manufacturers, save those excepted by specific enumeration, to wit, manufacturers of liquors (of different kinds), tobacco, cigars, and cotton seed oil; whereas, article 230 imposes the burden of property taxation upon all persons, save those (few in number) who are excepted by specific enumeration. It is therefore quite evident that the exception in the one case was intended to be, and is, much broader in *937 its application than in the other, and, as we find, includes the defendant.
It is therefore ordered and decreed that the judgments of the Court of Appeal and of the district court, here complained of, be annulled, that plaintiff’s demands be rejected, and that this suit be dismissed, at his cost in all courts.