(112 So. 412)

No. 28181.

STATE v. AMERICAN CREOSOTE WORKS, Inc.

March 28, 1927.

*(Syllabus by Editorial Staff.)*

1. Licenses ⬅19(4)—Manufacturers are not subject to license taxes for creosoting lumber (Act No. 233 of 1920, § 26; Act No. 205 of 1924, § 25).

Manufacturers are not subject to license taxes under Act No. 233 of 1920, § 26, and Act No. 205 of 1924, § 25, for engaging in business of creosoting lumber.

2. Licenses ⬅19(4)—Corporation making and creosoting telegraph poles, paving blocks, etc., held "manufacturer" exempt from license taxes for creosoting lumber (Act No. 233 of 1920, § 26; Act No. 205 of 1924, § 25).

Corporation engaged in business of converting rough lumber into telephone poles, paving blocks, car bumpers, etc., and rendering it practically imperishable and more valuable and useful through creosoting process, *held* a "manufacturer," exempt from license taxes for engaging in business of creosoting lumber under Act No. 233 of 1920, § 26, and Act No. 205 of 1924, § 25.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manufacturer.]

3. Licenses ⬅19(4)—"Manufacturer," exempt from license taxes for creosoting lumber, is one working raw materials into useful wares or giving new shapes, qualities, or combinations to artificial products (Act No. 233 of 1920, § 26; Act No. 205 of 1924, § 25).

A "manufacturer," exempt from license taxes for engaging in business of creosoting lumber under Act No. 233 of 1920, § 26, and Act No. 205 of 1924, § 25, is one engaged in business of working raw materials into wares suitable for use, or giving new shapes, qualities, or combinations to matter which has already gone through some artificial process.

Appeal from Twenty-Fourth Judicial District Court, Parish of Jefferson; L. Robert Rivarde, Judge.

Summary proceedings by the State of Louisiana, through its Tax Collector for the Parish of Jefferson, to compel payment of delinquent license taxes by the American Creosote Works, Incorporated. From a judgment of dismissal, plaintiff appeals. Affirmed.

Charles J. Larkin, Jr., of New Orleans, for the State.

William B. Grant, of New Orleans, for appellee.

ROGERS, J. The state of Louisiana, through its Tax Collector for the parish of Jefferson, proceeded summarily to compel payment by the defendant company of alleged delinquent license taxes for the years 1924, 1925, and 1926. Plaintiff averred that during the years in question the defendant company was engaged in the business of creosoting lumber and owed the license taxes claimed by virtue of section 26 of Act No. 233 of 1920 and section 25 of Act No. 205 of 1924.

The defendant company, in its answer, denied that it owed the license taxes demanded by the plaintiff, claimed exemption on the ground that it was a manufacturer, and averred that creosoting lumber was but an incident of its business.

After a hearing on the merits, the proceeding was dismissed; whereupon plaintiff appealed.

[1] The sole question presented for decision is whether the defendant company is engaged in the business of a manufacturer, for if such be a fact it is not subject to the license taxes demanded by the state. Downs v. Dunn, 162 La. 747, 111 So. 82.

[2] The established facts are, that the defendant company owns and operates a large plant at Southport, in the parish of Jefferson. This plant consists of a sawmill, machinery, boilers, switches, locomotives, cranes, and special equipment by means of which it turns out its product. In the past three or four years between 75 and 100 hands have been employed constantly in the work. In conducting its operations, the defendant company receives at its plant rough timber and lumber. The inner bark is peeled off the timber and the knots are smoothed down. It is then cut to the required lengths for piling. Telephone and telegraph poles are made by forming a roof, either slanting or pointed, on the ends of the timber, thus prepared, in which notches are cut to hold the cross-arms, and holes are bored for the insertion of bolts. The rough lumber is cut to size, mortised for splicing and trimmed. The resulting product is used for bridge and highway timber. Rough lumber is also planed and smoothed, cut to size, with holes for bolts, for use as cross-arms for telegraph or telephone poles. Wooden paving blocks are made by special machinery and cut to size as ordered by various municipalities. Cross-ties are adzed to afford an even surface for the plates. The plant also turns out car bumpers, factory flooring, and what is known as "Martinez" sheet piling, a patented article.

All of these articles before being placed upon the market as finished products are impregnated with creosote oil by an intricate mechanical process. The article to be treated is placed in an immense cylinder into which steam is admitted for the purpose of drawing out the resin, sap, and water. The steam is then exhausted from the cylinder and a vacuum is produced which draws out the remaining moisture and dries the article. Then air is pumped in further drying the wood, expanding the cells, and clearing out the resin that may have been left therein. Finally, creosote oil is applied under pressure, taking the place of the resin, sap, and water forced out and filling up the expanded cells of the wood.

We think the foregoing process is essentially a manufacturing process. The raw material is given new shapes and new qualities by that process. Rough timber and lumber are converted into telephone and telegraph poles, cross-arms for said poles, bridge, and highway timber, paving blocks, car bumpers, factory flooring, patented sheet piling, and cross-ties prepared to receive the necessary tie plates. An inferior grade of lumber and timber, through the process of creosoting, becomes practically imperishable, resisting the destructive inroads of the weather and of time and the destructive efforts of insects both on land and in the sea. The ultimate product is much more valuable from a financial standpoint than is the raw material, and it is vastly more useful in commerce and industry.

[3] The operations of the defendant company, which we have hereinabove described, are well within the definition of a manufacturer as laid down by this court in City of New Orleans v. Ernst, 35 La. Ann. 747, citing City of New Orleans v. Le Blanc, 34 La. Ann. 597, viz.:

"A manufacturer is defined to be: One who is engaged in the business of working raw materials into wares suitable for use, [or] who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. A manufacturer prepares the original substance for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw material."

This definition was referred to and approved in State v. Brown, 140 La. 928, 74 So. 253.

In State v. Amer. Biscuit Mfg. Co., 47 La. Ann. 160, 16 So. 750, it was held that one

who made crackers and Italian paste from flour was a manufacturer.

In State v. Wilbert, 51 La. Ann. 1223, 26 So. 106, it was held that:

"The proprietor of an establishment employed in the conversion of saw logs into lumber of different kinds and qualities in its rough state, is engaged in changing, by machinery, of raw materials into new and useful forms, and is therefore a manufacturer. * * *"

The court has also held to be manufacturers and as such exempt from license taxes the following classes of business, viz.: A company engaged in the refining of sugar (State v. American Sugar Refining Co., 108 La. 603, 32 So. 965); a company engaged in the business of casting iron wheels (State v. Transmission Machinery Co., 157 La. 827, 103 So. 180); and a company making only special brands of cakes entirely by machinery, except the icing and wrapping (State v. Young, 157 La. 845, 103 So. 186).

The case of the Shreveport Creosote Co. v. City of Shreveport, 119 La. 637, 44 So. 325, which is strongly relied on by the plaintiff, is not, in our opinion, in point. In that case the exemption claimed was from municipal and parochial taxes on capital, machinery, and other property alleged to be employed "in the manufacture of furniture and other articles of wood." The taxes involved were for the year 1906. The lands on which the buildings and machinery of the plaintiff company were constructed were purchased subsequent to May 1, 1906. The assessment on the property had been closed at the time of plaintiff's purchase, and the state taxes were paid. The actual erection of the plant did not begin until June, 1906, and the machinery was not put into actual operation until December 27, 1906, only four days before the end of the year, when a lot of cross-ties purchased from an outside party was subjected to the creosoting process. In these circumstances, the court held that the plaintiff company was not entitled, as "a man-

ufacturer of furniture and other articles of wood," to have its lands exempted from taxation, but it expressly limited its decision to the condition of things then existing, holding that it could not and did not render a decree to cover by anticipation an exemption which might be claimed in the future. Plaintiff's demand for an injunction was therefore dismissed, without prejudice.

For the reasons assigned, the judgment appealed from is affirmed.