JANVIER, Judge.
The question presented is easily stated though not so easily answered. It is simply whether the plaintiff, Carl T. Smith, Jr., is a manufacturer, or is merely engaged in the business of buying dry beans in large quantities and, after cleaning and packaging them, selling them at wholesale. If he is merely a wholesaler, then he is liable for an occupational license tax in accordance with the provisions of LSA-R.S. 47:351. If he is a manufacturer, then, under the provisions of LSA-R.S.. 47:396 subd. E, he is exempted from the obligation of paying an occupational license tax.
The Collector of Revenue of the State of Louisiana assessed against Carl T. Smith, Jr., a license tax for the years 1952 through 1955. He appealed to the Board of Tax Appeals which maintained the assessment. Under authority of LSA-R.S. 47:1434, he then filed in the Civil District Court for the Parish of Orleans a petition for review of the finding of the Board of Tax Appeals and that Court, after a hearing, dismissed his suit, maintaining the assessment of the license tax. The matter is now before us on appeal by plaintiff.
The record is made up almost entirely of the transcript of the hearing which was had before the Board of Tax Appeals, and we turn to that transcript to ascertain the nature of the business of Smith.
He describes his business as follows:
“ * * * We buy these beans in truck load and car load lots from sources throughout the country where they are grown, and assemble them in New Orleans. From the hundred pound bags that they come in we run these ■ beans through a process which consists of running them through a gravity separator that separates the beans by weight. In other words, if. there are rocks and beans in them you are able to take out the split beans and any nails or cigarette butts or anything that happens to get in them when they are sacked in the areas where they are grown. We further run these beans through a polishing process which is the same kind of equipment that is used in a rice mill to take the husk off, except instead of having an abrasive steel brush that the rice people use, we use a soft leather and synthetic rubber brush to polish the beans to take off the film of dirt that is on the beans. From that process they go into our packag *526 ing operation and I can show you a couple of pictures of these machines that packages the beans.”
He then exhibited photographs of the machines in question. These photographs indicate a rather complicated mechanical process for the cleaning and sorting of the beans, and the making and filling of the bags. Smith stated that his process “changes those beans from something the Food Drug (Act) wouldn’t let us sell unless we did run them through those cleaning processes.” He showed that he processes and packages several different varieties of dry beans, and he stressed the fact that the capital which is required in his business is invested to the extent of about 75% in the machines which clean and sort the beans and which make and fill the bags, and that the cost of making the bags and packaging the beans represents between 25 and 35 per cent of the cost of the finished product. About ten employees are employed and about half of them are engaged in operating the above referred to machines.
He further stated that, if he did not make the bags himself, it would be necessary that he buy them from a manufacturer and that this would add to the cost of his business.
It is further shown that, in the process of cleaning, sorting and preparing beans for sale, some are split or otherwise broken, some are immature, and some are small; that this process eliminates all of these broken beans and that they are packaged and sold as hog food.
On behalf of the Collector of Revenue, it is contended that Smith is merely buying the beans in large quantities and selling the same beans in smaller bags and thus his business cannot be termed as manufacturing but merely constitutes the selling of beans at wholesale.
Smith, on the other hand, contends that he buys large quantities of beans which, in the condition in which they are bought, are not suitable for human consumption, and that by his mechanical process, together with the labor which is attendant on that process, he manufactures an article which is suitable for human consumption, and that he thus actually manufactures the finished product which he sells to wholesale houses and other distributors.
The question of what is a manufacturing business has been considered many times by the Courts of this State. In State v. Magnolia Packing Co., 213 La. 661, 35 So.2d 422, 423, our Supreme Court directed attention to the fact that, ever since the adoption of the Constitution of 1879, “it has been the public policy of this State to exempt manufacturers from payment of occupational license taxes.”
In that case, the Magnolia Packing Co. case, the defendant operated a meat packing plant. It bought cattle and hogs on the hoof and slaughtered, cleaned and dissected them, and then sold some of the meat at wholesale, and from other parts processed it into lard, sausage, ham, bacon, hides, and other by-products. Apparently a large portion of its products was merely meat. In other words, as to that portion of its business it might be said that it was merely the “buyer of meat on the hoof,” and the seller of meat to wholesalers after it had been processed into a condition suitable for human comsumption. The Court then stated that the question arises “as to whether the Legislature intended to exempt those who, in connection with a manufacturing enterprise, engage in pursuits of a non-manufacturing nature.” The Court then held that the defendant was a manufacturer and therefore exempt from liability for an occupational license tax since 35% of its gross receipts resulted from its manufacturing operations. It is proper to state, however, that the Court followed this statement with a further statement. Referring to the Magnolia Packing Co., it said:
“In truth, its entire operations are so interwoven with manufacturing that it would be indeed difficult to say that *527 any part thereof can be rightfully separated from the whole.”
In a footnote the Court directed attention to many cases in which businesses were held to he manufacturing and to others in various businesses which were held to be not manufacturing, and directed special attention to its earlier decision in City of New Orleans v. Ernst & Co., 35 La.Ann. 746, in which it had held a rice miller to be a manufacturer, stating that a manufacturer is “one who is engaged in the business of working raw materials into wares suitable for use, who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process.” The Court said:
“A manufacturer prepares the original substance for use in different forms. He makes to sell, and stands between the original producer and the dealer, or first consumers, depending for his profit on the labor which he bestows on the raw material.”
In the case at bar there is nothing to contradict the testimony of Smith that, in the processing of beans, he uses machines which it is shown are practically identical with the machines used in the processing of rice. The rice machines removed the husk by the use “of an abrasive steel brush,” whereas the bean machines have substituted “a synthetic rubber brush” which, instead of removing the husk as the rice machines do, removes the dirt and other impurities and unusable beans and polishes the beans which are to be sold, thus making them a product suitable for human consumption.
Counsel for the Collector of Internal Revenue placed much reliance upon a decision of our Supreme Court in City of New Orleans v. New Orleans Coffee Co., 46 La.Ann. 86, 14 So. 502, 503. There the Coffee Company bought green coffee beans in bulk. It selected green coffee which, “after being subjected to manipulation, being roasted,” and cooled, “produce certain brands of coffee,” which were then suitable for human consumption. It was held that the Coffee Company merely bought coffee in bulk and sold coffee to the trade, and that it was not a manufacturer.
That decision was largely based on a decision of the Supreme Court of the United States rendered in 1887, in Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 1244, 30 L.Ed. 1012. Wiegmann & Son imported seashore shells, and, after cleaning and polishing them with an emery wheel, engraved on them various designs and then sold them. If Wiegmann & Son were merely importers of shells and sold the same shells and did not “manufacture” their finished product, no duty could have been collected. The Supreme Court of the United States held that Wiegmann & Son were not manufactureres, but merely imported shells and sold the same shells and therefore owed no duty. The Court, however, did hold that it was the public policy to resolve any such doubt in favor of the importer “as duties are never imposed on the citizen upon vague or doubtful interpretations.”
There are two very interesting cases in Louisiana which indicate obviously a trend in favor of the exemption of the manufacturer. In one of these cases, City of New Orleans v. Mannessier, in 1880, 32 La.Ann. 1075, the Supreme Court, referring to one who makes and sells icecream, said that he is not a manufacturer—
“We cannot assent to the proposition that a person making and selling icecream is a manufacturer in the sense of the law, or in any other sense of the word. The attempt to magnify a confectionery, which is defendant’s business, into a manufacture^ must fall. We are told that any one seeing the steam engine, complicated apparatus, and large force needed to produce defendant’s goods, would at once conclude that he is a manufacturer.”
*528 Finding ourselves unable to agree with that statement of the Supreme Court, we direct attention to the fact that the Supreme Court somewhat later discarded that finding and, in State Tax Collector v. Brown, 140 La. 928, 74 So. 253, held that a maker of icecream is plainly a manufacturer and, as such, is exempt from the payment of an Occupational license tax. A reading of the decision in the Brown case indicates that the Court had considerable difficulty in explaining its earlier decision in the Mannessier case.
The other of these interesting cases to which we have referred is State v. American Sugar Refining Co., 108 La. 603, 32 So. 965. There the Supreme Court held that the American Sugar Refining Company is a manufacturer though its business is merely the buying of sugar in one form and converting it into sugar in another form. The interesting thing about this case is that the Supreme Court, in its earlier decision involving the same company, had held that it is not a manufacturer. State v. American Sugar-Refining Co., 51 La.Ann. 562, 25 So. 447. The second decision was rendered although the Supreme Court stated that the process of refining sugar, as shown in that case, was identical with the process as shown in the earlier case. As indicating that there can be no doubt that the Supreme Court changed its opinion as to the process of converting one form of sugar into another form, note the following statement in the second of these cases [108 La. 603, 32 So. 972]:
“Having changed the views then so elaborately expressed, and thereby placed ourselves in the awkward attitude of overruling ourselves, it behooves us to give good reasons for our present opinion, and we proceed to do so.”
A study of all of the cited cases and many others leads to the conclusion that there are set forth in those cases rules for determining whether a business is a manufacturing business, and we do not hesitate to say that the business as described here could be placed in either category, depending on the line of decisions to be followed.
We are inclined to the view that, since Smith commences his process with an article which, in the state in which he purchases it, is not suitable for human consumption and then, by the application'of a mechanical process coupled with human labor, converts it into a product which is suitable for human consumption, he should be designated as a manufacturer and not merely as a wholesaler of beans.
Then, too, we cannot overlook the fact that, in his business, Smith actually manufactures bags and that the manufacture of these bags constitutes a very substantial portion of his business. That the making of bags is a manufacturing business was held by our Supreme Court in State v. Bemis Bro. Bag Co., 135 La. 397, 65 So. 554.
It does not alter the situation to say that Smith does not sell the bags. He manufactures them and sells them as a part of the finished product which his procéss produces. We feel that we can say here what the Supreme Court said in the Magnolia Packing Co. case, that about 35% of the business of Smith obviously consists of manufacturing and that, in fact, his “entire operations are so interwoven with manufacturing that it would be indeed difficult to say that any part thereof can be rightfully separated from the whole.”
Our conclusion is that the judgment appealed from should be reversed and the assessments against the business of the plaintiff should be annulled and cancelled.
The judgment appealed from is annulled, avoided and reversed and there is now judgment in favor of plaintiff as prayed for.
Reversed.